# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SALINE PARENTS, *et al.*,

                                        *Plaintiffs*,

        v.                                                          Civil  Case No. 1:21-cv-2775-DLF

MERRICK GARLAND, in his official
capacity as Attorney General of the
United States of America,

                                        *Defendant.*

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

## TABLE OF CONTENTS

INTRODUCTION.................................................................................................................. 1

BACKGROUND.................................................................................................................. 3

I.    The Attorney General's October 4, 2021 Memorandum ...................................... 3

II.    Plaintiffs' Factual and Legal Allegations............................................................. 5

STANDARDS OF REVIEW ............................................................................................... 6

ARGUMENT ...................................................................................................................... 7

I.    This Court Lacks Jurisdiction Over Plaintiffs' Complaint. ................................. 8

   A.   Plaintiffs Lack Article III Standing.................................................................. 8

      1.   Plaintiffs fail to plead an injury in fact. ........................................... 9

         a.   The *Susan B. Anthony* "chilling" injury test applies.................................. 9

         b.   The Memorandum does not "arguably proscribe" Plaintiffs'
               purported conduct. ............................................................................. 11

         c.   There is not a substantial threat of future enforcement of the Memorandum
               against Plaintiffs............................................................................... 12

      2.   Plaintiffs cannot establish that the Memorandum causes them any injury,
            or that it would be redressable by an order of this Court............................ 13

         a.   The Memorandum merely reflects the current state of the law regarding true
               threats, and so does not itself injure Plaintiffs. .......................................... 14

         b.    Rescission of the Memorandum would not redress Plaintiffs' purported injury.... 15

   B.   Plaintiffs' Claims Are Unripe. ................................................................. 16

II.   Plaintiffs Fail to State a Constitutional Claim. ................................................. 17

   A.   Plaintiffs fail to state a claim that the Memorandum constitutes an improper
         content-and-viewpoint-based restriction on speech...................................... 17

B.   Plaintiffs fail to state a claim that the Memorandum violates their rights to equal protection. ................................................................................................................ 20

1.   Plaintiffs fail to allege facts establishing discriminatory purpose.. ........................... 20

2.   Failure to plead similarly situated persons.................................................................. 23

3.   Plaintiffs fail to properly plead that the Government has made distinctions based on ideology, and rational basis review applies—and the Government's actions were rational. .................................................................................................. 23

C.   The Memorandum violates no parental rights............................................................... 26

CONCLUSION ........................................................................................................................ 27

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abbott Labs v. Gardner,*
    387 U.S. 136 (1967) ................................................................................... 16

*\*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ............................................................................ *passim*

*Atl. States Legal Found, Inc. v. EPA,*
    325 F.3d 281 (D.C. Cir. 2003) .................................................................. 16

*Babbitt v. United Farm Workers Nat'l Union,*
    442 U.S. 289 (1979) ..................................................................................... 9

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ..................................................................................... 7

*Bell v. Keating,*
    697 F.3d 445 (7th Cir. 2012) ..................................................................... 10

*Bellinger v. Bowser,*
    No. 17-cv-2134 (TJK), 2018 WL 47058086 (D.D.C. Sept. 30, 2018) ............... 22, 23

*Brown v. Fed. Election Comm'n,*
    386 F. Supp. 3d 16 (D.D.C. 2019) ............................................................. 10

*Cement Kiln Recycling Coal. v. EPA,*
    439 F.3d 207 (D.C. Cir. 2007) .................................................................. 16

*City of Cleburne v. Cleburne Living Ctr., Inc.,*
    473 U.S. 432 (1985) ................................................................................... 23

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013) ................................................................................... 13

*Clark v. Stone,*
    998 F.3d 287 (6th Cir. 2021) ..................................................................... 10

*Community Fin. Servs. Ass'n of Am, Ltd. v. FDICl,*
    1132 F. Supp. 3d 98 (D.D.C. 2015) ........................................................... 15

*Cooper Hospital/University Med. Ctr. v. Burwell,*
    179 F. Supp. 3d 31 (D.D.C. 2016) ............................................................. 25

*Devia v. Nuclear Regul. Comm'n,*
    492 F.3d 421 (D.C. Cir. 2007) ................................................ 16, 17

*Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity,*
    878 F.3d 371 (D.C. Cir. 2017) ................................................ 9

*Get Outdoors II, LLC v. City of San Diego, Cal.,*
    506 F.3d 886 (9th Cir. 2007) ................................................ 15

*Jerome Stevens Pharm., Inc. v. FDA,*
    402 F.3d 1249 (D.C. Cir. 2005) ................................................ 7

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
    511 U.S. 375 (1994) ................................................ 8

*Laird v. Tatum,*
    408 U.S. 1 (1972) ................................................ 10, 11, 13

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ................................................ *passim*

*M.K. v. Tenet,*
    99 F. Supp. 2d 12 (D.D.C. 2000) ................................................ 25

*Matthew A. Goldstein, PLLC v. U.S. Dep't of State,*
    851 F.3d 14 (D.C. Cir. 2017 ................................................ 12

*McInnis-Miesnor v. Maine Medical Ctr.,*
    319 F.3d 63 (1st Cir. 2003) ................................................ 17

*Meyer v. Nebraska,*
    262 U.S. 390 (1923) ................................................ 26

*Muwekma Oholone Tribe v. Salazar,*
    708 F.3d 209 (D.C. Cir. 2013) ................................................ 23

*Nat'l Sec. Couns. v. CIA,*
    931 F. Supp. 2d 77 (D.D.C. 2013) ................................................ 3

*Nat'l Treasury Emps. Union v. United States,*
    101 F.3d 1423 (D.C. Cir. 1996) ................................................ 16

*Nazareth Hosp. v. Sec'y, U.S. Dep't of Health & Human Servs.,*
    747 F.3d 172 (3d Cir. 2014) ................................................ 25

*Pers. Adm'r of Mass. v. Feeney,*
    442 U.S. 256 (1979) ........................................................................................... 21

*Pierce v. Soc'y of the Sisters of the Holy Names of Jesus and Mary,*
    268 U.S. 510 (1925) ........................................................................................... 26

*Pinson v. U.S. Dep't of Just.,*
    No. 18-cv-486 (RC), 2021 WL 3418954 (D.D.C. Aug. 5, 2021) ............................... 3

*Pleasant Grove City v Summum,*
    555 U.S. 460 (2009) ........................................................................................... 18

*Police Dep't of Chicago v. Mosley,*
    408 U.S. 92 (1972) ............................................................................................. 18

*\*R.A.V. v. City of St. Paul.,*
    505 U.S. 377 (1992) ................................................................................. 14, 15, 19

*Reed v. Town of Gilbert, Ariz.,*
    576 U.S. 155 (2015) ........................................................................................... 18

*Renne v. Geary,*
    501 U.S. 312 (1991) ............................................................................................. 7

*Rock the Vote v. Trump,*
    No. 20-cv-06021-WHO, 2020 WL 6342927 (N.D. Cal. Oct. 29, 2020) ................ 11, 13

*Rodriguez v. Maricopa Cty. Comm. College Dist.,*
    605 F.3d 703 (9th Cir. 2010) ............................................................................... 15

*Settles v. U.S. Parole Comm'n,*
    429 F.3d 1098 (D.C. Cir. 2005) ........................................................................... 23

*Shaffer v. Def. Intelligence Agency,*
    601 F. Supp. 2d 16 (D.D.C. 2009) ......................................................................... 8

*Smothers v. Dist. of Columbia,*
    No. 19-cv-2632 (ABJ), 2020 WL 54112945 (D.D.C. Sept. 9, 2020) ....................... 21

*Sorrell v. IMS Health Inc.,*
    564 U.S. 552 (2011) ........................................................................................... 18

*Strzok v. Barr,*
    No. 19-cv-2367 (ABJ), 2019 WL 113434061 (D.D.C. Oct. 7, 2019) ......................... 8

*Susan B. Anthony List v. Driehaus,
   573 U.S. 149 (2014) ..................................................................................... passim

Texas v. United States,
   523 U.S. 296 (1998) ......................................................................................... 8, 16

Trump v. New York,
   141 S. Ct. 530 (2000) ............................................................................................. 16

Tucker v. Branker,
   142 F.3d 1294 (D.C. Cir. 1998) .............................................................................. 23

Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.,
   429 U.S. 252 (1977) ............................................................................................... 22

*Virginia v. Black,
   538 U.S. 343 (2003) ..................................................................................... passim

Walker v. Texas Div., Sons of Confederate Veterans, Inc.,
   576 U.S. 200 (2015) ............................................................................................... 18

Walsh v. Brady,
   927 F.2d 1229 (D.C. Cir. 1991) ....................................................................... 24, 25

West v. Lynch,
   845 F.3d 1228 (D.C. Cir. 2017) ................................................................................ 9

Women Prisoners of D.C. Dep't of Corr. v. Dist. of Columbia,
   93 F.3d 910 (D.C. Cir. 1996) .................................................................................. 23

Woodhull Freedom Found. v. United States,
   948 F.3d 363 (D.C. Cir. 2020) .............................................................. 9, 10, 12, 13

Wright v. Foreign Serv. Grievance Bd.,
   503 F. Supp. 2d 163 (D.D.C. 2007),
   aff'd, No. 07-5328, 2008 WL 4068606 (D.C. Cir. Mar. 17, 2008) ........................... 7

Zablocki v. Redhail,
   434 U.S. 374 (1978) ............................................................................................... 24

## INTRODUCTION

On October 4, 2021, the Attorney General issued a five-paragraph memorandum to Department of Justice personnel entitled "Partnership Among Federal, State, Local, Tribal, and Territorial Law Enforcement to Address Threats Against School Administrators, Board Members, Teachers, and Staff" (the "Memorandum") [attached hereto as "Ex. A."].  That Memorandum had three parts.  First, following the Supreme Court's decision in *Virginia v. Black*, 538 U.S. 343, 359-60 (2003), the Memorandum acknowledged that "spirited debate about policy matters is protected under our Constitution," but the First Amendment's "protection does not extend to threats of violence or efforts to intimidate individuals based on their views."  Second, the Memorandum specified that the Department of Justice took such threats "seriously" and would announce future measures "designed to address the rise in criminal conduct directed toward school personnel."  Finally—in the Memorandum's only directive provision—the Attorney General instructed Department personnel to engage in inter-governmental meetings with federal, state, local, Tribal, and territorial leaders to discuss "strategies for addressing threats" against school officials and "open dedicated lines of communication" to address any such threats.  Those meetings were to happen within 30 days, or by November 3, 2021.

The Memorandum imposed no new regulations, proscriptions, or requirements on private parties.  It did not institute or otherwise put in motion any enforcement actions against private parties.  And it did not impose or even purport to impose new or additional limits on any person's speech.  Rather, the Memorandum followed long-governing Supreme Court doctrine regarding threats of violence and called for inter-governmental fact-finding on that issue.  Plaintiffs nonetheless brought this suit insisting that the Memorandum violates their constitutional rights.  It does not.  Accordingly, and for numerous, independent reasons, this case should be dismissed.

1

The Court need not even reach the merits of Plaintiffs' claims, because this case should be dismissed for lack of Article III jurisdiction on standing and ripeness grounds.  As for standing, Plaintiffs plead no cognizable injury in fact.  While they allege a First Amendment "chilling" injury, those types of purported injuries require that Plaintiffs' purported future conduct be "arguably proscribed" by the government action they challenge, *and* that there be a credible and substantial threat of future enforcement of the challenged government policy against them.  But the Memorandum imposes no restrictions on individuals at all, and certainly none on those who exercise their First Amendment right to express viewpoints—of any kind—without resorting to intimidation, violence, or threats thereof.  Nor is there a credible threat that a memorandum for which the action item consists of holding intergovernmental meetings could somehow be enforced against Plaintiffs.  Nor is any purported injury traceable to the Memorandum, or redressable by an order enjoining that memorandum: The Memorandum itself merely reflects existing First Amendment law; it does not change the governing legal standards, and so cannot itself injure Plaintiffs.  And even if there was standing, the case is unripe because it depends on contingent future events—the adoption of future policies or future actions—that Plaintiffs could only speculate might occur.

Even if the Court were to reach the merits, Plaintiffs fail to state a claim upon which relief could be granted.  Their allegations that the Memorandum constitutes content and viewpoint discrimination fail, because it does not regulate private speech—much less based on content or viewpoint.  And in any event, the Supreme Court has long made clear that true threats—the subject of the Memorandum—are not entitled to First Amendment protection.

Nor can Plaintiffs plead an equal protection violation, alleging that the Department targeted them based on their political views.  They do not plead facts that, under *Ashcroft v. Iqbal*, 556 U.S.

662 (2009), the Department plausibly acted with a discriminatory purpose, or that they are subject to some restriction from the Memorandum while being similarly situated to others with different political views who are not.  Indeed, they do not plead facts establishing that any distinctions in the Memorandum were based on Plaintiffs' ideology.  Accordingly, this policy would be evaluated, if at all, under the rational basis framework, and it was not irrational for the Department to task its officials with studying threats of violence against school officials.

Finally, Plaintiffs cannot establish that the Department has violated their Constitutionally protected parental rights.  The Constitution does not authorize otherwise prohibited true threats against school officials, nor does the Memorandum infringe upon any Constitutionally protected rights.

For these reasons, and those set out in more detail below, this Court should dismiss Plaintiffs' Complaint.

## BACKGROUND

I.    **The Attorney General's October 4, 2021 Memorandum**

On October 4, 2021, the Attorney General issued the Memorandum.[1]  *See* Ex. A.[2]  That Memorandum clearly stated that it was addressing "illegal" threats of violence and did not address, never mind limit or chill, speech protected by the First Amendment.  *Id.*

---

[1]  The Memorandum is repeatedly referenced in Plaintiffs' Complaint, and, as the memorandum they seek to enjoin, is integral to their claims.  *See, e.g.*, Compl. ¶¶ 45-49, 57, 60, 63, Prayer for Relief ¶¶ A-C, ECF No. 1.  "But 'while a court may not consider matters outside the pleadings in evaluating a motion to dismiss under Rule 12(b)(6) without converting the motion to one for summary judgment under Rule 56, documents that are referenced in, or are an integral part of, the complaint are deemed not outside the pleadings.'"  *Pinson v. U.S. Dep't of Just.*, No. 18-cv-486 (RC), 2021 WL 3418954, at n.4 (D.D.C. Aug. 5, 2021) (quoting *Nat'l Sec. Couns. v. CIA*, 931 F. Supp. 2d 77, 102 n.14 (D.D.C. 2013)) (internal quotation marks, and citation omitted).

[2]  *Also available at*: https://www.justice.gov/ag/page/file/1438986/download.

The Memorandum began by noting that "[i]n recent months, there has been a disturbing spike in harassment, intimidation, and threats of violence against school administrators, board members, teachers, and staff."  *Id.*  It went on to note, as reflected in Supreme Court precedent, *see Virginia v. Black*, 538 U.S. 343, 359-60 (2003), that "[w]hile spirited debate about policy matters is protected under our Constitution, that protection does not extend to threats of violence or efforts to intimidate individuals based on their views."  Ex. A.

Next, the Memorandum expressed a commitment to respond to such illegal threats of violence, stating that: "The Department takes these incidents seriously and is committed to using its authority and resources to discourage these threats, identify them when they occur, and prosecute them when appropriate."  *Id.*

Finally, the Memorandum announced its only concrete tasking.  After noting that "[c]oordination and partnership with local law enforcement is critical to implementing these measures [designed to address the rise in criminal conduct directed toward school personnel] for the benefit of our nation's nearly 14,000 public school districts," the Memorandum directed Department of Justice personnel to:

> [C]onvene meetings with federal, state, local, Tribal, and territorial leaders in each federal judicial district within 30 days of the issuance of this memorandum [*i.e.*, by November 3, 2021]. These meetings will facilitate the discussion of strategies for addressing threats against school administrators, board members, teachers, and staff, and will open dedicated lines of communication for threat reporting, assessment, and response.

*Id.*

The Memorandum closed by stating that "[t]he Department is steadfast in its commitment to protect all people in the United States from violence, threats of violence, and other forms of intimidation and harassment."  *Id.*

## II.      Plaintiffs' Factual and Legal Allegations

Plaintiffs—five individuals and one unincorporated association—filed this lawsuit on October 19, 2021.  One plaintiff, Raelyn Davis, is a resident of Saline, Michigan, and has two children currently enrolled in the Saline Area Schools ("SAS") public school district.  *See* Compl. ¶ 10, ECF No. 1.  She is also a member and director of plaintiff Saline Parents, which is alleged to be an association that opposes the curricula and policies of the SAS district.  *Id.* ¶¶ 7-8, 11.  Davis alleges that she "strongly and publicly object[s] to and oppose[s]" SAS curricula and policies.  *Id.* ¶ 13; *see also id.* ¶ 11 (stating that Davis has "publicly opposed at school board meetings and elsewhere" SAS curricula and policies).

The other four plaintiffs are residents of Loudoun County, Virginia, and they allege that their taxes support Loudoun County Public Schools ("LCPS"), and, in some cases, that they either have or had children in LCPS schools.  *See* Compl. ¶¶ 14-23.  Each makes the same allegation: that they are an "outspoken public critic of LCPS" and its alleged policies.  *See id.* ¶ 17 (plaintiff Van Fleet); ¶ 19 (plaintiff Mobley); ¶ 21 (plaintiff Rivera); ¶ 23 (plaintiff Cooper); *see also id.* ¶ 23 (link to a video of plaintiff Cooper addressing the LCPS school board).

Collectively, Plaintiffs assert their rights to "publicly object," including "vociferously and even stridently" to SAS and LCPS's curricula and policies.  Compl. ¶ 28.  Plaintiffs also state that they "express their outrage and objections to these programs during school board meetings . . . and in other public forums."  *Id.* ¶ 43.

In their lawsuit, Plaintiffs challenge the Memorandum, which they sometimes refer to as the "AG Policy," although they do not identify any aspect of a "policy" other than the October 4 memorandum.  *See* Compl. ¶¶ 45-48.  They assert that the Memorandum was "intentionally designed (its intended purpose and effect) to chill parents and other private citizens, including

Plaintiffs, from publicly expressing their opposition to the 'progressive' agenda being implemented by government officials in the public schools and thereby silent such expression." *Id.* ¶ 45; *see also id.* ¶ 56 ("Because of the AG Policy, public school boards and school officials know that they can now chill and indeed silence the speech of the opposition by claiming that it is 'harassing' or 'intimidating,' or 'threatening.'"); *id.* ¶ 60 (alleging that "[m]any parents and private citizens who share Plaintiffs views" find the AG Policy "shocking" and are "frightened and intimidated" by it).

Plaintiffs bring three legal claims for relief, all directly under the U.S. Constitution. *First*, they allege that the Memorandum is a "content-and viewpoint-based restriction on speech in violation of the First Amendment," Compl. ¶ 65, because it "confers broad powers of censorship, in the form of a 'heckler's veto,'" upon government officials, *id.* ¶ 67. *See also id.* ¶ 68 ("The AG Policy permits local school boards and school officials as well as government agents and officials to censor, chill, and otherwise restrict Plaintiffs' speech based on the content and viewpoint expressed by Plaintiffs' message in violation of the First Amendment."). *Second*, Plaintiffs argue that the Memorandum violates the Fifth Amendment's equal protection components by allegedly "targeting" plaintiffs "because they object to the 'progressive' agenda," while permitting violence by those who "promote the 'progressive' agenda." *Id.* ¶¶ 76, 78. *Finally*, Plaintiffs aver that the Memorandum "unreasonably interferences with the liberty of parents and guardians . . . to direct the upbringing and education of their children under their control in violation of the Fifth Amendment." *Id.* ¶ 82.

## STANDARDS OF REVIEW

Plaintiffs bears the burden of demonstrating subject-matter jurisdiction. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Courts should "presume that [they] lack jurisdiction unless

the contrary appears affirmatively from the record." *Renne v. Geary*, 501 U.S. 312, 316 (1991) (citations omitted). "Although a court must accept as true all the factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1)," the factual allegations in the complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007), *aff'd* No. 07-5328, 2008 WL 4068606 (D.C. Cir. Mar. 17, 2008) (internal citations omitted). The Court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

To withstand a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The plaintiff must, accordingly, plead facts that allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged" and offer "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

## ARGUMENT

This Complaint should be dismissed for two independently dispositive reasons: The Court lacks jurisdiction, and Plaintiffs fail to state a claim upon which relief can be granted. Plaintiffs cannot establish this Court's Article III jurisdiction. Plaintiffs lack standing—they cannot plead injury in fact, causation, or redressability—and, in any event, the case is not ripe. On the merits, Plaintiffs have not pled a plausible First Amendment violation, because the Memorandum imposes no content or viewpoint-based discrimination, and the kinds of true threats that the Memorandum

addresses are not protected by the First Amendment.  Plaintiffs' equal protection claim also fails; they have not pleaded facts showing that the Attorney General acted with a discriminatory purpose in issuing the Memorandum, or that Plaintiffs are similarly situated to another relevant group.  Nor have they pled facts indicating that the Attorney General discriminated on the basis of ideology; thus, the only relevant constitutional standard is rational basis, and Plaintiffs have not pled facts establishing that the government's basis for focusing on threats against school officials was not rational.  Finally, Plaintiffs' constitutionally protected parental rights are not implicated by the Department's efforts to work in partnership with other law enforcement officials concerning threats against school personnel.

## I.      This Court Lacks Jurisdiction Over Plaintiffs' Complaint.

"Federal courts are courts of limited jurisdiction and the law presumes that 'a cause lies outside this limited jurisdiction.'"  *Strzok v. Barr*, No. 19-cv-2367 (ABJ), 2019 WL 11343406, at * 1 (D.D.C. Oct. 7, 2019) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  This "case or controversy requirement" mandates that plaintiffs have (1) Article III standing at the time the plaintiff files their complaint, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992), and (2) that the case is ripe, *i.e.*, it does not "rest[] upon contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Shaffer v. Def. Intelligence Agency*, 601 F. Supp. 2d 16, 23 (D.D.C. 2009) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)).  Here, Plaintiffs have failed to adequately plead either of these jurisdictional requirements, and so this Court should dismiss this case for lack of subject-matter jurisdiction.

### A.  Plaintiffs Lack Article III Standing.

"To establish standing, the plaintiff must show (1) it has suffered a 'concrete and particularized' injury (2) that is 'fairly traceable to the challenged action of the defendant' and (3)

that it is 'likely' to be 'redressed by a favorable decision,' i.e., a decision granting the plaintiff the relief it seeks." *Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 376-77 (D.C. Cir. 2017) (quoting *West v. Lynch*, 845 F.3d 1228, 1230 (D.C. Cir. 2017)). Plaintiffs cannot satisfy any of these three requirements.

### 1. Plaintiffs fail to plead an injury in fact.

In order to invoke this Court's jurisdiction, Plaintiffs must have an injury in fact – *i.e.*, "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (quotation marks and internal citations omitted). Plaintiffs claim that the Memorandum injures them by "chilling" their future speech in violation of the First Amendment. *See, e.g.*, Compl. ¶¶ 45, 56, 60. To allege a "sufficiently imminent injury for the purposes of Article III" in a chilling challenge, plaintiffs must satisfy the three-part test established by the Supreme Court in *Susan B. Anthony List v. Driehaus* ("*SBA*"), 573 U.S. 149, 151 (2014). *See Woodhull Freedom Found. v. United States*, 948 F.3d 363, 370-71 (D.C. Cir. 2020) (laying out *SBA* test). They cannot do so.

### a. The *Susan B. Anthony* "chilling" injury test applies.

*SBA* sets out three requirements that plaintiffs must satisfy to successfully establish injury based on a purported chill of their constitutional rights. *First*, the plaintiffs must allege "an intention to engage in a course of conduct arguably affected with a constitutional interest," *SBA*, 573 U.S. at 162 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).

*Second*, the intended future conduct must be "arguably . . . proscribed by [the] [government action] they wish to challenge."[3] *Id.* (quoting *Babbitt*, 442 U.S. at 298). Not just any type of

___

[3] Moreover, in a pre-enforcement challenge at the motion to dismiss stage, as here, the Court itself must determine whether the plaintiff's conduct is "arguably . . . proscribed by" the challenged government action. Accordingly, the Court must construe the legal effect of the

government action can give rise to a chilling injury claim: rather, "the challenged exercise of governmental power [must be] regulatory, prospective, or compulsory in nature." *Laird v. Tatum*, 408 U.S. 1, 11 (1972); *see also Clark v. Stone*, 998 F.3d 287, 296 (6th Cir. 2021) (applying "regulatory, proscriptive, or compulsory" government action requirement to chilling claim); *Bell v. Keating*, 697 F.3d 445, 454 (7th Cir. 2012).

*Third*, there must be a "credible threat of prosecution," such that the "threat of future enforcement of the [challenged government action] is substantial." *SBA*, 573 U.S. at 159, 162, 164.  Importantly, that threat of future enforcement is measured objectively: "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972); *see also Woodhull Freedom Found.*, 948 F.3d at 371 ("Although lower courts' willingness to permit pre-enforcement review is at its peak when claims are rooted in the First Amendment, a plaintiff must still demonstrate more than a subjective chill to establish an injury-in-fact.") (internal citations and quotation marks omitted).

Plaintiffs cannot meet these standards.  The premise of Plaintiffs' complaint is that the Memorandum has chosen viewpoints to prefer and that "outspoken, public critic[s]" of such policies must therefore stand down.  Compl. ¶¶ 17, 19, 21, 23.  But the Memorandum says nothing of the sort.  It does not restrict or otherwise chill speech.  Indeed, it emphasizes explicitly that

---

challenged government action as part of the standing inquiry, even though normally it would assume plaintiffs' view of government action for standing purposes.  *Woodhull Freedom Found*, 948 F.3d at 371; *see also SBA*, 573 U.S. at 162 (construing—rather than assuming plaintiff's interpretation of—challenged statute to determine whether plaintiffs conduct is "arguably proscribed"); *Brown v. Fed. Election Comm'n*, 386 F. Supp. 3d 16, 28 (D.D.C. 2019) (looking as to whether it is "reasonably clear" that plaintiff's conduct will fall within the relevant statute).

"spirited debate about policy matters is protected under our Constitution." *See* Ex. A.  Plaintiffs thus cannot satisfy the second and third prongs of *SBA*.

> **b. The Memorandum does not "arguably proscribe" Plaintiffs' purported conduct.**

To begin, the Memorandum does not prohibit, much less "arguably proscribe," either conduct or speech.  Rather, the Memorandum directs Department personnel "to convene meetings with federal, state, local, Tribal, and territorial leaders" in order to discuss "strategies for addressing threats against school administrators, board members, teachers, and staff."  Ex. A.  Holding inter-governmental meetings and planning to issue future policies or take undefined future actions is not a "regulatory, proscriptive, or compulsory" "exercise of governmental power," as required for a claim of chilling injury. *Laird*, 408 U.S. at 11.  As detailed above, the Memorandum did not impose any new regulations, proscriptions, or requirements on private parties.

This case is thus comparable to *Rock the Vote v. Trump*, No. 20-cv-06021-WHO, 2020 WL 6342927 (N.D. Cal. Oct. 29, 2020), where plaintiffs challenged an Executive Order that directed executive agencies to narrowly construe a section of the Communications Decency Act, and to propose regulations to clarify that provision moving forward.  Plaintiffs challenged the Executive Order, premised upon a chilling theory of injury.  The Court rejected their allegations of standing.  The Court noted that "[t]he Executive Order does not directly regulate or restrict the speech of online platforms," but rather "outlines a policy goal of promoting unbiased content management on the internet and orders executive departments and agencies to take various steps that purportedly aim to further this goal." *Id.* at *7.  Accordingly, "[n]one of the actions proscribe any constitutional right because they do not restrict or regulate the platforms directly, they are simply steps that may or may not lead to additional regulations, restrictions, or liability at some uncertain point in the future." *Id.*  So too here: the Memorandum does not "restrict or regulate," but merely

11

instructs Department officials to take steps that may lead to future actions designed to address true threats—not speech protected by the First Amendment.

Plaintiffs also fail the "arguably proscribe" requirement of *SBA* because their only allegations are related to speech that is protected by the First Amendment and not covered by the Memorandum.  Their allegations describe speech that is precisely the "spirited debate about policy matters" that the Memorandum explicitly recognizes "is protected under our Constitution."  Ex. A.  They do not allege that they intend to engage in behavior that is even plausibly close to "threats of violence or efforts to intimidate individuals based on their views."  Ex. A.  Absent some intent to engage in behavior that arguably falls within the scope of the Memorandum (and there is none), Plaintiffs lack standing to challenge its terms.  To be sure, the Supreme Court does not "require[] that a plaintiff who wishes to challenge the constitutionality of a law to confess that he will in fact violate that law."  *SBA*, 573 U.S. at 163.  But Plaintiffs must still plead facts establishing future conduct that could plausibly come within the Memorandum's ambit.  *See id.* (finding standing based on the fact that the government had previously taken action against the plaintiffs and that "there is every reason to think that similar speech in the future will result in similar proceedings.").  Here, they do not plead any facts indicating an intent to engage in conduct arguably proscribed by the Memorandum (which, again, reflects existing law and on its own proscribes nothing).

### c.  There is not a substantial threat of future enforcement of the Memorandum against Plaintiffs.

In any event, Plaintiffs independently lack standing because there is not a "substantial" "threat of future enforcement" of the Memorandum against them.  *Woodhull Freedom Found.*, 948 F.3d at 373 (quoting *SBA*, 573 U.S. at 164); *see also Matthew A. Goldstein, PLLC v. U.S. Dep't of State*, 851 F.3d 1, 4 (D.C. Cir. 2017) ("But there is something fundamental to a pre-enforcement challenge that is missing here.  There must be some desired conduct by the plaintiff that might

trigger an enforcement action in the first place."). Along with imposing no substantive proscriptions, the Memorandum does not institute or otherwise put in motion any enforcement actions against any private parties, never mind Plaintiffs. As explained, it calls for partnership and coordination between federal and nonfederal officials in assessing possible violence. *See* Ex A; *see also Rock the Vote*, 2020 WL 6342927, at *7 (holding that "[a]ny potential enforcement based on . . . possible future regulations [that may be issued based on the Executive Order at issue] is far too speculative to give rise to a concrete or particularized injury at this point in time."). Nor have plaintiffs identified a "history of past enforcement" with respect to their conduct vis-à-vis school meetings or officials. *See SBA*, 573 U.S. at 164 ("We have observed that past enforcement against the same conduct is good evidence that the threat of enforcement is not chimerical.") (citation and quotation marks omitted); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411 (2013) (failure to offer evidence of allegedly chilling conduct "substantially undermines [plaintiffs'] standing theory"). Just the opposite—at least one plaintiff, Cooper, includes a video in the Complaint of her "passionately addressing the LCPS school board in opposition" to its policies, without ever alleging any past, present, or future consequences of such actions. *See* Compl. ¶ 24.

***

Absent pled facts showing an intent to engage in conduct arguably proscribed by the Memorandum *and* a substantial threat of prosecution—neither of which is present—Plaintiffs cannot make out an objective fear of chilling, and thus cannot establish Article III standing. *Laird*, 408 U.S. at 13-14; *Woodhull Freedom Found.*, 948 F.3d at 371.

### 2. Plaintiffs cannot establish that the Memorandum causes them any injury, or that it would be redressable by an order of this Court.

Even if Plaintiffs had adequately pled injury in fact, they have not pled facts showing that there is a "causal connection between the injury [*i.e.*, the purported chilling of their First

13

Amendment rights] and the conduct complained of," such that the injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (internal citation and alterations omitted). Plaintiffs allege that the Memorandum's articulation of First Amendment law will cause local officials to "chill and indeed silence the speech of the opposition." *See* Compl. ¶ 56; *see also id.* ¶ 67 ("The AG Policy permits local school boards and school officials as well as government agents and officials to censor, chill, and otherwise restrict Plaintiffs' speech."). The Memorandum does none of these things.

> ### a. The Memorandum merely reflects the current state of the law regarding true threats, and so does not itself injure Plaintiffs.

Because the Memorandum accurately reflects existing law, and does not create new legal standards, Plaintiffs cannot plausibly allege that it causes them injury. In a prefatory paragraph, the Memorandum notes that "[w]hile spirited debate about policy matters is protected under our Constitution, that protection does not extend to threats of violence or efforts to intimidate individuals based on their views." Ex. A; *see also id.* ("The Department is steadfast in its commitment to protect all people in the United States from violence, threats of violence, and other forms of intimidation and harassment."). This simply follows governing Supreme Court law, which makes clear that prohibitions against "true threats"—to include threats of violence and intimidation—do not violate the First Amendment. *See, e.g.*, *Virginia v. Black*, 538 U.S. 343, 359 (2003) ("'True threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular group of individuals."); *id.* ("[T]hreats of violence are outside the First Amendment") (quoting *R.A.V. v. City of St. Paul*, 505 U.S. 377, 388 (1992)); *see also id.* at 460 ("Intimidation in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person

or group of persons with the intent of placing the victim in fear of bodily harm or death."); *Rodriguez v. Maricopa Cty. Comm. College Dist.*, 605 F.3d 703, 710 (9th Cir. 2010) ("Harassment law generally targets conduct, and it sweeps in speech as harassment only when consistent with the First Amendment.") (citing *R.A.V.*, 505 U.S. at 389-90).  Plaintiffs cannot plausibly claim to be chilled by a Memorandum that accurately follows decisions of the Supreme Court on the scope of the First Amendment.

> **b. Rescission of the Memorandum would not redress Plaintiffs' purported injury.**

Plaintiffs similarly fail to establish redressability, *i.e.*, that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Lujan*, 504 U.S. at 561 (citation and internal quotation marks omitted).  Here, Plaintiffs have not pled facts showing that vacatur of the Memorandum would be likely to remedy their purported chilling injury.  Indeed, precisely because the Memorandum does not change the law in any way, federal, state, and local officials may prosecute true threats in precisely the same way as they could before the Memorandum was ever issued.  Regardless of the Memorandum, Plaintiffs could not engage in true threats absent the potential for legal consequences.  But because this is so, vacating the Memorandum would not redress any potential future injury—since the same set of legal permissions and prohibitions on their behavior would exist after the memo was vacated as before. *See, e.g.*, *Get Outdoors II, LLC v. City of San Diego, Ca.l*, 506 F.3d 886, 895 (9th Cir. 2007) (holding that plaintiff lacked redressability when it challenged a permit procedure, but where "[n]o change in the permit procedure would result in the approval of the permits it requests."); *Community Fin. Servs. Ass'n of Am., Ltd. v. FDIC*, 132 F. Supp. 3d 98, 112 (D.D.C. 2015) (concluding that plaintiffs had pled that invalidation of agency documents would have a "substantial likelihood of redressability" when they pled facts showing that such invalidation

would "affect Defendants' ability to pressure banks in the future," or that the guidance documents were the "fulcrum" of existing agency strategy).

### B.  Plaintiffs' Claims Are Unripe.

Article III also requires that a "case must be 'ripe'—not dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Trump v. New York*, 141 S. Ct. 530, 535 (2000) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)); *see also id.* (concluding that "this case is riddled with contingents and speculation that impede judicial review"). "The basic rationale of the ripeness doctrine is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been finalized and its effects felt in concrete ways by the challenging parties." *Cement Kiln Recycling Coal. v. EPA*, 439 F.3d 207, 2014 (D.C. Cir. 2007) (quoting *Abbott Labs v. Gardner*, 387 U.S. 136, 148-49 (1967)) (internal quotation marks omitted). In testing ripeness, a court considers both "[(1) the fitness of the issues for judicial decision and [(2) the hardship to the parties of withholding court consideration." *Devia v. Nuclear Regul. Comm'n*, 492 F.3d 421, 424 (D.C. Cir. 2007) (quoting *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1431 (D.C. Cir. 1996)).

"[T]he fitness of an issue for judicial decision depends on whether it is 'purely legal, whether consideration of the issue would benefit from a more concrete setting, and whether the agency's action is sufficiently final.'" *Id.* (quoting *Atl. States Legal Found, Inc. v. EPA*, 325 F.3d 281, 284 (D.C. Cir. 2003)). Fundamentally, however, judicial fitness turns on whether the case "depends on future events that may never come to pass, or that may not occur in the form forecasted"; if so, the cases are unripe, because "[f]ederal courts cannot – and should not – spend

their scare resources on what amounts to shadow boxing." *Id.* at 424-25 (quoting *McInnis-Miesnor v. Maine Medical Ctr.*, 319 F.3d 63, 72 (1st Cir. 2003)).

Set against these standards, this case is not fit for judicial disposition.  The Memorandum does not itself initiate any prosecutions or announce specific measures to address the rise in threats. *See* Ex. A.  Because it does not, Plaintiffs cannot plausibly allege that future measures would affect them (and if so, how).  Nor do Plaintiffs make allegations about what may come out of the coordination called for in the Memorandum, much less the impact of any possible future policies or measures that may come from those meetings.  Plaintiffs' challenge is therefore not ripe for adjudication.

Moreover, with respect to whether there is "hardship to the parties of withholding court consideration," *Devia*, 492 F.3d at 427, here, such claims would be "insubstantial."  Plaintiffs are "not required to engage in, or to refrain from, any conduct," because of the Memorandum. *Id.*  Nor is any hardship to them "immediate and significant," because the Memorandum imposes no obligations on them. *Id.*  Accordingly, this case should be dismissed as unripe.

## II.  Plaintiffs Fail to State a Constitutional Claim.

Although the Court may dispose of the Complaint by dismissing it for lack of jurisdiction under Rule 12(b)(1), should the Court reach the merits, it should dismiss the Complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

### A.  Plaintiffs fail to state a claim that the Memorandum constitutes an improper content-and viewpoint-based restriction on speech.

The heart of Plaintiffs' challenge is that the Memorandum "is a content-and viewpoint-based restriction on speech in violation of the First Amendment."  Compl. ¶ 65.  This allegation falls short for two independent reasons.  First, the Memorandum is not a restriction on speech (or

anything else).  Second, the First Amendment does not protect the threats of violence, intimidation, or harassment that are the subject of the Memorandum.

"The Free Speech Clause restricts government regulation of private speech."  *Pleasant Grove City v Summum*, 555 U.S. 460, 467 (2009).  Accordingly, with limited exceptions, the First Amendment prohibits the government from "restrict[ing] expression because of its message, its ideas, its subject matter, or its content."  *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015) (quoting *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 95 (1972)).  By contrast, restrictions on "nonexpressive conduct" do not implicate the First Amendment, even if those restrictions may impose "incidental burdens on speech."  *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011).  The First Amendment, however, "does not regulate government speech," *Pleasant Grove City*, 555 U.S. at 467.  Rather, "as a general mater, when the government speaks it is entitled to promote a program, to espouse a policy, or to take a position" without implicating the First Amendment. *Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 208 (2015).

This doctrinal dichotomy resolves this claim.  The Memorandum does not restrict or regulate private speech at all.  Rather, it (1) expresses the federal government's own view, based in Supreme Court precedent, that "threats against public servants" are illegal and "run counter to our nation's core values," and (2) directs Department of Justice employees to convene meetings with local, state, Tribal, and territorial leaders for a "discussion of strategies for addressing threats" against school officials.  Ex A.  At no point in its one-page text does the Memorandum impose any restrictions on speech, and indeed, it does not regulate expressive conduct at all.  Rather, it conveys the government's "position" on threats of violence against school officials—that such threats are illegal and improper, *Walker*, 576 U.S. at 208.  Accordingly, because there is no regulation of

speech, but rather merely a manifestation of the government's own views as a speaker, the Memorandum does not implicate the First Amendment.

In any event, the Memorandum encounters no First Amendment difficulty, because by its very terms it refers only to speech that is not protected by the Constitution. The Memorandum concerns only threats of violence and intimidation, *i.e.*, "true threats." And as the Supreme Court held in *Virginia v. Black*, 538 U.S. 343 (2003), the First Amendment "permits a State to ban a 'true threat,'" a category that includes both "threats of violence" and "intimidation." *Id.* at 359-60. Since a ban on true threats does not violate the First Amendment, and since the Memorandum only involves such threats, the Memorandum does not implicate the First Amendment.

Nor, in any event, would the type of "true threat" conduct addressed in the Memorandum constitute impermissible content- or viewpoint-based discrimination. *See* Compl. ¶¶ 64-74. In *R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992), the Supreme Court noted that content discrimination "applies differently in the context of proscribable speech than in the area of fully protected speech." *Id.* at 387; *see also Virginia*, 538 U.S. at 361 ("[In *RAV*] we specifically stated that some types of content discrimination did not violate the First Amendment."). The government may "discriminate among various instances of a class of proscribable speech," so long as it does not discriminate based upon the viewpoint of that speech. *R.A.V.*, 505 U.S. at 388. The government may, for example, "criminalize only those threats of violence that are directed against the President," but it may not "criminalize only those threats against the President that mention his policy on aid to inner cities." *RAV*, 505 U.S. at 388; *see also Virginia*, 538 U.S. at 362 (noting that "the Virginia statute [banning cross burning with the intent to intimidate] does not single out for opprobrium only that speech directed toward 'one of the specified topics,'" such as race, gender, political affiliation, etc.). Applying this principle here, the federal government

could not criminalize only those true threats that were made by actors of a particular political persuasion. But the government could certainly focus on *school-related* threats without running afoul of *Virginia* and *RAV*. And that is exactly what the Attorney General did here: he issued a memorandum focusing on threats of violence against school administrators, board members, teachers, and staff, without any distinction based on the viewpoint expressed by such threats. The First Amendment does not prohibit such actions.

### B. Plaintiffs fail to state a claim that the Memorandum violates their rights to equal protection.

Plaintiffs' second count alleges that the Department has violated their equal protection rights under the Fifth Amendment "[b]y targeting peaceful, private citizens . . . because they object to the 'progressive' agenda, policies, and actions of local school boards and school officials." Compl. ¶ 76; *see also id.* ¶ 78 (alleging that the Memorandum targets Plaintiffs "for adverse treatment because of their viewpoint on political and social issues"). But this claim—which appears to be best understood as a claim of differential treatment based on Plaintiffs' political views—fails to state an equal protection claim for a number of independent, dispositive reasons. Most fundamentally, Plaintiffs never plead facts adequate under *Iqbal* to show that a memorandum that concerns fact-finding regarding violence against school officials—without any reference to individuals, much less their political beliefs—constitutes constitutionally cognizable discrimination against Plaintiffs on the basis of political ideology. That is enough to dismiss this claim. But even assuming this fundamental objection can be overcome, Plaintiffs fail to comport with the doctrinal requisites for an equal protection allegation.

### 1.    Plaintiffs Fail to Allege Facts Establishing Discriminatory Purpose.

"In order to establish an equal protection violation, a litigant is required to show that 'the defendant acted with discriminatory purpose,' meaning 'it involves a decisionmaker's undertaking

a course of action because of, not merely in spite of, the action's adverse effects upon an identifiable group." *Smothers v. Dist. of Columbia*, No. 19-cv-2632 (ABJ), 2020 WL 5411294, at *5 (D.D.C. Sept. 9, 2020) (quoting *Iqbal*, 556 U.S. at 676) (citation omitted); *see also Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 273 (1979) ("even if a neutral law has a disproportionate adverse effect upon a [protected class], it is unconstitutional under the Equal Protection Clause only if that impact can be traced to a discriminatory purpose"). But here, in the face of a memorandum that is neutral in scope, applying to all threats of violence against school officials, not those issued by those of a particular political persuasion, Plaintiffs have not pled any facts showing that "discrimination is . . . a plausible conclusion." *Iqbal*, 556 U.S. at 682.

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009), is dispositive. There, as here, plaintiffs alleged that a policy that allegedly had a discriminatory effect on the basis of race, religion, and/or national origin was implemented *because* of those discriminatory effects. *Id.* at 681. The Court rejected that claim at the motion to dismiss stage. It first held that allegations that defendants subjected plaintiffs to mistreatment on account of their protected status were "bald allegations" that were merely "formulaic recitation of the elements of a constitutional discrimination claim." *Id.* (quotations omitted); *see also id.* ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."). Plaintiffs' allegations of discriminatory intent here are similarly conclusory, and should be rejected for the same reason as *Iqbal*. *See* Compl. ¶ 78 ("The AG Policy is targeting Plaintiffs and other similarly situated parents and private citizens for adverse treatment because of their viewpoint on political and social issues . . . .").

To be sure, Plaintiffs plead in conclusory fashion that the Department of Justice purportedly targeted them for adverse treatment based on their viewpoint. Compl. ¶ 78; *see also*

*id.* ¶ ("And while the Attorney General has directed his law enforcement authority and resources to target private citizens speaking out at school board meetings, he has completely ignored a real, existential, and national criminal threat because the perpetrators of this *criminal* activity share the Attorney General's political views."). But this purported (and speculative) differential treatment is not enough: "[o]n its own, however, evidence of disparate impact will seldom support an inference of intentional discrimination," even at the motion to dismiss stage. *Bellinger v. Bowser*, No. 17-cv-2134 (TJK), 2018 WL 4705808, at *6 (D.D.C. Sept. 30, 2018). Here, the allegations that the Plaintiffs' purported differential treatment happened because of the Attorney General's purported political views, absent more, are merely conclusory labels that must be rejected under *Iqbal*.

And all that is left, then, is purported differential treatment among Plaintiffs and ideologically different affiliate groups, but absent any facts showing a discriminatory intent to treat these groups differently *because* of their alleged group status, allegations of intentional discrimination are not "plausible." *See id.* at *6-7." (citing *Iqbal*, 556 U.S. at 679). And here, there are no such facts: Plaintiffs do not allege a pattern of discriminatory impact that is "unexplainable on grounds other than [political views]," they do not allege departures from normal procedures, nor "contemporary statements" by "decisionmak[ers]" that suggest discriminatory intent, nor a suspicious "sequence of events leading up to the challenged decision." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266-68 (1977). The failure to even plead any of these elements precludes the inference that intentional discrimination is plausible; indeed, were it otherwise, *any* purported differential effect of a facially neutral policy would be enough to get past the motion to dismiss hurdle, a conclusion that the Supreme Court roundly rejected in *Iqbal*. 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with

a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (quotation omitted).  *See also Bellinger*, 2018 WL 4705808, at *7 (rejecting claim of intentional discrimination based on differential treatment of libraries in majority-white and majority-African American neighborhoods, notwithstanding pleading of facts showing differential funding and services, because even with such facts, differential purpose was not plausible).

### 2.   Failure to plead similarly situated persons.

The "Equal Protection Clause requires [the federal government] to treat similarly situated persons alike." *Women Prisoners of D.C. Dep't of Corr. v. Dist. of Columbia*, 93 F.3d 910, 924 (D.C. Cir. 1996) (citing *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)). To prevail, "the plaintiff must show that the government has treated it differently from a similarly situated party and that the government's explanation for the differing treatment 'does not satisfy the relevant level of scrutiny.'" *Muwekma Oholone Tribe v. Salazar*, 708 F.3d 209, 215 (D.C. Cir. 2013) (quoting *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1102 (D.C. Cir. 2005)).   But Plaintiffs plead no facts showing that persons engaged in "criminal rioting, looting, destruction of private property, [and] attacks on law enforcement," Compl ¶ 58, are situated the same as plaintiffs. Such situations would involve different legal standards, different violations, different jurisdictions, and different measures of appropriate legal response.

### 3.   Plaintiffs fail to properly plead that the Government has made distinctions based on ideology, and rational basis review applies—and the Government's actions were rational.

Further, to establish an equal protection violation, Plaintiffs must show that the "government's explanation for the differing treatment does not satisfy the relevant level of scrutiny." *Muwekma Ohlone*, 708 F.3d at 215 (quotation omitted).  They cannot.

The first step is to determine the level of scrutiny.  A "classification that does not burden either a fundamental right or a suspect class must be reviewed under the rational basis test." *Tucker v. Branker*, 142 F.3d 1294, 1300 (D.C. Cir. 1998).  There are no allegations that Plaintiffs are a suspect class (*i.e.*, race, gender, or national-origin), nor that this case implicates the "'fundamental rights' line of equal protection jurisprudence, which requires 'heightened' scrutiny for any distinction in a law that restricts fundamental rights (such as First Amendment freedoms)." *Walsh v. Brady*, 927 F.2d 1229, 1236 (D.C. Cir. 1991); *see also Zablocki v. Redhail*, 434 U.S. 374, 388 (1978) ("When a statutory classification *significantly interferes* with the exercise of a fundamental right, it cannot be upheld unless it is supported by sufficiently important state interests and is tailored to effectuate only those interests.") (emphasis added).

Plaintiffs have not pled facts establishing any distinction in the Memorandum that is based on ideology, nor that the Memorandum "significantly interferences" with their exercise of their fundamental rights.  First, as discussed above, the Memorandum makes no distinction regarding the ideology of any party; it applies to conduct in the form of true threats, regardless of the political views of the person uttering the relevant words.  Nor have Plaintiffs pled facts supporting the idea that there is an implicit ideological distinction, *i.e.*, that the Attorney General issued the memo *because* of an intent to discriminate against Plaintiffs ideological views.  There is simply a bare assertion that this is so, *see* Compl. ¶¶ 58, 59—but a bare assertion does not satisfy *Iqbal*.  It is not "plausible," that ideology, as opposed to other standards for when scarce Department resources are approiate, justices what Plaintiffs claim—inaccurately, *see supra* II.B.1—is any such differential treatment.  *See Iqbal*, 556 U.S. at 678-79.

Nor, in any event, have Plaintiffs pled facts showing that the Memorandum "significantly interferes" with their First Amendment rights such that heightened scrutiny would be applicable.

The term "significantly interferes"—as is relevant for heightened scrutiny—is applied "very narrowly." *Walsh*, 927 F.2d at 1237.  It applies, for example, to "absolute" restrictions, or situations where the prohibited conduct was "essential."  *Walsh*, 927 F.2d at 1237.  The Memorandum imposes no restrictions on speech; much less "absolute" restrictions or the prohibition of "essential" conduct; Plaintiffs are free to advocate stridently for their preferred policy positions, including those that are against the preferences of those in power.  Although the Memorandum directs Department of Justice personnel to coordinate with state, local, and Tribal authorities about threats against school officials, the First Amendment does not protect such threatening conduct, and therefore fundamental rights are simply not in play.  *See M.K. v. Tenet*, 99 F. Supp. 2d 12, 31 (D.D.C. 2000) (there can be no violation of equal protection based on a fundamental right to First Amendment when "the plaintiffs have stated no violation of their First Amendment rights").  Thus, even assuming that it makes any sort of classification, the Memorandum does not implicate Plaintiffs' First Amendment rights, much less "significantly interfere" with those rights.  This case therefore calls for rational-basis scrutiny.

Viewed through this lens of scrutiny, it is obvious that Plaintiffs' claims are meritless. "[R]eview of an equal protection claim in the context of agency action is similar to that under the APA." *Cooper Hospital/University Med. Ctr. v. Burwell*, 179 F. Supp. 3d 31, 47 (D.D.C. 2016) (quoting *Nazareth Hosp. v. Sec'y, U.S. Dep't of Health & Human Servs.*, 747 F.3d 172, 180 (3d Cir. 2014).  When, as here, no suspect class is involved, the only question is whether the action was "rational (*i.e.*, not arbitrary and capricious)." *Id.*  Here, given the importance of public education, it is entirely appropriate for the Department to focus its efforts on ensuring a safe environment for all involved, irrespective of how it is separately addressing other individuals or groups in other settings.  And, given the multiple levels of government involved in education in

this country, it was equally appropriate for the federal government to do so in coordination with various state, local, Tribal, and territorial officials.  The Equal Protection Clause is simply not implicated by this sensible, partnership-based approach to an emergent issue.  In the event Equal Protection is implicated at all, its mandates are more than satisfied here.

### C.  The Memorandum violates no parental rights.

The third and final count of Plaintiffs' complaint is that the Memorandum "unreasonably interferes with the liberty of parents and guardians, including certain Plaintiffs whose children attend SAS or LCPS . . . to direct the upbringing and education of their children under their control in violation of the Fifth Amendment."  Compl. ¶ 82.  While the Supreme Court has recognized a qualified fundamental right of "parents and guardians to direct the upbringing and education of children under their control," *Pierce v. Soc'y of the Sisters of the Holy Names of Jesus and Mary*, 268 U.S. 510, 534-55 (1925) (citing *Meyer v. Nebraska*, 262 U.S. 390 (1923)), Plaintiffs have not adequately pled that any such right has been violated here.

First, Plaintiffs have not pled any facts explaining *how* the Department is violating their parental rights; rather, the complaint simply states that the Memorandum *is* violating those rights. *See* Compl. ¶ 82.  But this is, at best, simply a "[t]hreadbare recitals of the elements of a cause of action," or "conclusory statements," which "do not suffice."  *Iqbal*, 556 U.S. at 678.  Indeed, stating that the Department "unreasonably interferes with the liberty of parents and guardians" is exactly the sort of "labels and conclusions" that are "devoid of further factual enhancement" that the Supreme Court explicitly rejected.  *Id.* (quotation omitted)

Plaintiffs have every right to advocate for policies they believe are appropriate for their children.  But they do not have the right to issue threats while advocating for such policies.  And more to the point – the Memorandum, which mentions *nothing* about the substance of such matters,

other than to note that "spirited debate about policy matters is protected under our Constitution," Ex. A, certainly does not interfere with any such parental rights afforded by the U.S. Constitution. The Memorandum does not purport to dictate the substance of education policy in any jurisdiction, nor does it address in any way parents' rights to direct their children's upbringing.  Plaintiffs therefore fail to state a claim for violation of parental rights.

## **CONCLUSION**

For the aforementioned reasons, this Court should dismiss the Complaint for lack of jurisdiction and failure to state a claim.

Dated January 3, 2022                    Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director

*/s/ Joseph E. Borson*
JOSEPH E. BORSON (Va. Bar No. 85519)
Trial Attorney
U. S. Department of Justice
Civil Division, Federal Programs Branch
1100 L St., NW
Washington, D.C. 20005
Tel.    (202) 514-1944
Email:  joseph.borson@usdoj.gov

*Counsel for Defendant*

27