**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

SALINE PARENTS, *et al.*,

                            *Plaintiffs*,

       v.

MERRICK GARLAND, in his official
capacity as Attorney General of the
United States of America,

                            *Defendant.*

Civil  Case No. 1:21-cv-2775-DLF

**REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION................................................................................................... 1

ARGUMENT ........................................................................................................ 2

I.    Most of Plaintiffs' Allegations in their Amended Complaint are Conclusory and
Should be Excluded Under *Twombly* and *Iqbal*.................................................. 2

II.    This Court Lacks Jurisdiction over Plaintiffs' Amended Complaint............................. 6

    A.    Plaintiffs Fail to Plead Article III Injury In Fact. ................................. 6

    B.    Plaintiffs Cannot Establish that the Department Caused Them Any Injury,
Or That Such Injury Would Be Redressable By An Order of this Court............... 8

    C.    Plaintiffs' Claims Are Not Ripe. .......................................................... 9

III.    Plaintiffs Fail To State a Constitutional Claim Under the First or Fifth
Amendments. ...................................................................................................10

    A.    The Government's Actions Comport with the First Amendment. .......................10

        1.    The Department Has Not Violated Plaintiffs' Fundamental Right
of Expression. ..........................................................................................10

        2.    The Department Has Not Discriminated on the Basis of Content or
Viewpoint. ...............................................................................................12

        3.    The Department Has Not Designated Plaintiffs as "Criminal
'Threats' or 'Domestic Terrorists.'"..........................................................12

        4.    The Department Has Not Threatened Intrusive and Coercive
Investigations and Surveillance to Dissuade Political Opposition in
Violation of Plaintiffs' Fundamental Rights. ...........................................13

    B.    The Government's Actions Comport with the Fifth Amendment.......................14

    C.    The Government's Actions Are Consistent With the Parental Rights
Protections Provided by the Constitution............................................................16

IV.    Plaintiffs Fail To State a Claim Under RFRA. ............................................16

CONCLUSION....................................................................................................17

## TABLE OF AUTHORITIES

**CASES**

*Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*,
  897 F.3d 314 (D.C. Cir. 2018) ...................................................................................17

*\*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................*passim*

*\*Bell Atl. Co. v. Twombly*,
  55 U.S. 544 (2007) .....................................................................................................2

*Christian Legal Soc'y Chapter of the Univ. of Calif., Hastings Coll. of the Law v. Martinez*,
  561 U.S. 661 (2010) ..................................................................................................12

*Devia v. Nuclear Regul. Comm'n*,
  492 F.3d 421 (D.C. Cir. 2007) ....................................................................................9

*Erickson v. Pardus*,
  551 U.S. 89 (2007) .......................................................................................................5

*In re Navy Chaplaincy*,
  738 F.3d 425 (D.C. Cir. 2013) ..................................................................................15

*Johnson v. Dist. of Columbia*,
  49 F. Supp. 3d 115 (D.D.C. 2014) ...........................................................................5, 6

*Kaemmerling v. Lappin*,
  553 F.3d 669 (D.C. Cir. 2008) ..................................................................................17

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994) .....................................................................................................6

*Ladeairous v. Rosen*,
  No. 15-cv-00954 (ABJ), 2021 WL 722869 (D.D.C. Feb. 14, 2021), *appeal filed*,
  *Ladeairous v. Garland*, No. 21-5119 (D.C. Cir. May 28, 2021) ...............................3

*Leavitt v. Yelp! Inc.*,
  765 F.3d 1123 (9th Cir. 2014) .....................................................................................3

*Lii Chu v. United States*,
  No. 13-cv-13038-FDS, 2014 WL 1774941 (D. Mass. May 1, 2014) ........................3

*Lujan v, Defs. of Wildlife*,
  504 U.S. 555 (1992) .....................................................................................................9

*Markson v. Scheriffius*,
  No. 3:14-cv-00257-MOC-DCK, 2015 WL 1417847 (W.D.N.C. Mar. 27, 2015) .......5

*Meese v. Keene*,
481 U.S. 465 (1987) ...................................................................................... 12, 13

*Melton v. Dist. of Columbia*,
85 F. Supp. 3d 183 (D.D.C. 2015) ...................................................................... 3

*Nat'l Treasury Emps. Union v. United States*,
101 F.3d 1423 (D.C. Cir. 1996) ........................................................................... 9

*Rodriguez v. Maricopa Cnty. Comm. Coll. Dist.*,
605 F.3d 703 (9th Cir. 2010) .............................................................................. 11

*Ross v. Moffitt*,
417 U.S. 600 (1974) ............................................................................................. 15

*Sanchez-Mercedes v. Bureau of Prisons*,
435 F. Supp. 404 (D.D.C. 2020) ........................................................................... 7

*Schubarth v. Fed. Republic of Germany*,
No. 1:14-cv-02140 (CRC), 2017 WL 6551150 (D.D.C. Mar. 9, 2017) ................... 5

*Simon v. E. Ky. Welfare Rights Org.*,
426 U.S. 26 (1976) ................................................................................................. 9

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) ............................................................................................... 6

*The Presbyterian Church (USA) v. United States*,
870 F.2d 518 (9th Cir. 1989) ......................................................................... 13, 14

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021) ........................................................................................... 7

*Trimble v. Dist. of Columbia*,
779 F. Supp. 2d 54 (D.D.C. 2011) ........................................................................ 3

*United States v. Sayer*,
748 F.3d 425 (1st Cir. 2014) ............................................................................... 11

*Virginia v. Black*,
538 U.S. 343 (2003) ............................................................................................. 10

*Wannall v. Honeywell, Inc.*,
775 F.3d 425 (D.C. Cir. 2014) .............................................................................. 6

## INTRODUCTION

In October 2020, the Department of Justice issued a one-page internal memorandum regarding threats of violence against school officials (the "Memorandum"). ECF No. 10-2. A few weeks later, the FBI followed up on that memorandum with an internal email that provided guidance on tracking threats against school officials (the "Email"). ECF No. 10-3. Both documents focused on impermissible true threats that the Supreme Court has long held are not constitutionally protected; neither document discriminated on the basis of content, viewpoint, religious belief, or political preference. Neither document violates the Constitution or any federal statute.

Plaintiffs contend that the Department has a policy of condemning parents with particular political or religious beliefs as "domestic terrorists" or "criminal threats." They do not, however, point to *any* statements by the Department adopting any such labels, much less applying them to Plaintiffs. Nor do they articulate any facts showing that the Memorandum or Email were issued because of Plaintiffs' political or religious beliefs.

For multiple independent reasons, the Amended Complaint should be dismissed. First, the only non-conclusory allegations in Plaintiffs' Amended Complaint involve the Memorandum and the Email. Both of these documents speak for themselves, and neither offend the Constitution or any federal statute. Plaintiffs argue that *Twombly* and *Iqbal*, which explicate the standards for dismissal under Rule 12, should be limited to their facts, but the Supreme Court rejected this exact argument regarding the scope of *Twombly* over ten years ago in *Iqbal* itself. These decisions control and require the Court to disregard that Plaintiffs' conclusory allegations that the Department has labeled them "domestic terrorists" or "criminal threats."

Second, Plaintiffs' sole claimed basis for Article III standing is an alleged injury to their reputation by purportedly being labeled as "domestic terrorists"; they do not attempt to support the

"chilling" theory of injury they put forward in their Amended Complaint. But Plaintiffs do not plead any facts showing that the Department has in fact labeled them as "domestic terrorists," and so their reputations cannot have been injured.

Third, Plaintiffs fail to state a claim on the merits. Their First Amendment claim fails because the Memorandum and Email do not discriminate on the basis of viewpoint or content; those documents simply note that "true threats" are not protected by the Constitution, which accurately reflects the Supreme Court's case law. Their Equal Protection claim fails because they do not identify any discrimination on the basis of political or social view. Their parental rights constitutional claim fails because they do not show how their constitutional rights are violated by a statement that "true threats" are not constitutionally protected. And their RFRA claim fails because they have not pleaded facts establishing that their religious exercise is burdened at all, let alone "substantially burdened," by the Department.

Accordingly, for these reasons, and those set out in the Department's opening brief, Plaintiffs' Amended Complaint should be dismissed.

## ARGUMENT

**I.     Most of Plaintiffs' Allegations in their Amended Complaint are Conclusory and Should be Excluded Under *Twombly* and *Iqbal*.**

The core deficiency in Plaintiffs' operative complaint is a lack of properly pleaded factual support for both Plaintiffs' alleged injuries and claims on the merits. Nearly all of Plaintiffs' factual and legal theories derive from speculative inferences from largely unrelated facts or simple conclusory assertions rather than actual factual allegations. Facts in a complaint must be well pleaded to be taken as true under the standards articulated in *Iqbal* and *Twombly*. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atl. Co. v. Twombly*, 55 U.S. 544, 555 (2007). Conclusory

assertions that do not meet these standards should be disregarded when determining whether Plaintiffs' claims to relief are plausible.

As to Plaintiffs' Amended Complaint, the Department explained in its opening memorandum that while Plaintiffs purport to challenge an "Attorney General Policy," they do not identify this supposed policy with any specificity.  Instead, they call out four alleged actions by the Department, which they then attempt to label or characterize as a policy.  The purported elements of this "policy" are: (1) an October 4, 2021 Memorandum organizing intergovernmental meetings to discuss threats of violence against school officials; (2) an October 20, 2021 FBI email providing direction on how to internally track such threats; (3) unadorned allegations that the Department labeled Plaintiffs as "domestic terrorists," and (4) allegations that, on one occasion, federal agents of the Department of Homeland Security were present at a school board meeting in Fairfax, Virginia.  *See* Mem. in Supp. of Def.'s Mot. to Dismiss Pls.' Am. Compl., at 4-5, ECF No. 10-1 ("MTD").  As the Department further explained, the latter two allegations are the type of bare, conclusory allegations that are insufficient under *Twombly* and *Iqbal*.  *See id.* at 13-15; *see also Iqbal*, 556 U.S. at 681 ("conclusory" allegations are "not entitled to be assumed true").[1]

---

[1] These assertions are the sort of conclusory allegations, absent any supporting facts, that are routinely dismissed at the Rule 12 stage.  *See, e.g.*, *Ladeairous v. Rosen*, No. 15-cv-00954 (ABJ), 2021 WL 722869, at *9 (D.D.C. Feb. 14, 2021) (allegation that plaintiff is the target of purportedly illegal surveillance is "purely conclusory," absent specific allegations of supporting facts that would show that such surveillance is plausible), *appeal filed*, *Ladeairous v. Garland*, No. 21-5119 (D.C. Cir. May 28, 2021); *Lii Chu v. United States*, No. 13-cv-13038-FDS, 2014 WL 1774941, at *1 (D. Mass. May 1, 2014) (complaint must contain information providing a plausible basis for a belief that plaintiff has actually been the subject of surveillance; mere assertion is not sufficient at motion to dismiss stage); *Melton v. Dist. of Columbia*, 85 F. Supp. 3d 183, 194-95 (D.D.C. 2015) (plaintiff's speculation that "an unidentified policy and uncorroborated practice or custom exists without providing any factual heft to support the allegation is insufficient to state a claim") (quoting *Trimble v. Dist. of Columbia*, 779 F. Supp. 2d 54, 59 (D.D.C. 2011)); *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135-36 (9th Cir. 2014) (allegation that Yelp had authored a negative review of plaintiff, as opposed to negative review being authored by an Yelp user, was not plausible absent additional supporting factual allegations).

Ultimately, all of Plaintiffs' claims—both as to standing and the merits—rely on conclusory allegations about purported "domestic terrorism" or "criminal threat labels" or characterizations of the Memorandum or Email divorced from actual well-pleaded facts about these documents. *See* MTD at 12-15.

In their Opposition, Plaintiffs do not dispute that their complaint makes conclusory allegations. Plaintiffs point to no statement, document, or communication, for example, that would support the conclusory assertion that the Department has "labeled and targeted [them] as domestic terrorists," *e.g.*, First Am. Compl. ¶ 38, ECF No. 8 ("Am. Compl."); *see also id.* ¶¶ 65, 66, 79, 84, 94, 107. Similarly, Plaintiffs also fail to show how a parked car belonging to the Department of Homeland Security that was present at a school board meeting in a county where none of them live would plausibly establish that the *Department of Justice* has instituted a policy to "silence parents" who object to certain school policies. *E.g.*, Am. Comp. ¶¶ 2, 87. Such "naked assertion[s] devoid of further factual enhancements" simply do not suffice at the motion to dismiss stage. *Iqbal*, 556 U.S. at 678 (citation omitted).

Instead, Plaintiffs argue that neither *Twombly* nor *Iqbal* controls here. Their first argument is that these cases should be limited to their specific facts. *See* Pls.' Resp. in Opp'n to Mot. to Dismiss, at 13, 15, ECF No 12 ("Opp'n"). But the Supreme Court in *Iqbal* explicitly rejected any attempts to narrow its holding to any specific factual context:

> Respondent first says that our decision in *Twombly* should be limited to pleadings made in the context of an antitrust dispute. . . . Th[a]t argument is not supported by *Twombly* and is incompatible with the Federal Rules of Civil Procedure. Though *Twombly* determined the sufficiency of a complaint sounding in antitrust, the decision was based on our interpretation and application of Rule 8. That Rule in turn governs the pleading standard "in all civil actions and proceedings in the United States district courts.". . . Our decision in *Twombly* expounded the pleading standard for "all civil actions," . . . and it applies to antitrust and discrimination suits alike.

*Iqbal*, 556 U.S. at 684 (internal citations omitted). In short, *Iqbal*'s plausibility standard—and its requirement that "bald" or "conclusory" allegations be rejected, *id.* at 681—controls.

Plaintiffs also argue that *Erickson v. Pardus*, 551 U.S. 89 (2007), a decision issued in the time between *Twombly* and *Iqbal*, both applies a meaningfully different pleading standard and controls here, rather than *Twombly* or *Iqbal*. *See* Opp'n at 12. *Erickson* was an Eighth Amendment deliberate indifference case, where the Court concluded that the allegations that a doctor had "remove[d] petitioner from his prescribed hepatitis C medication," "shortly after" the petitioner had started a one year treatment program, and while still in need of treatment for the disease satisfied the pleading standards of Rule 8. *Erickson*, 551 U.S. at 94. "At best, the most that can be said about *Erickson* is not that it is inconsistent with either *Iqbal* or *Twombly*, but, rather, that it is a *per curiam* decision that was decided under the *Twombly* plausibility standard, but before the Court clearly defined in *Iqbal* what constituted a plausible claim." *Markson v. Scheriffius*, No. 3:14-cv-00257-MOC-DCK, 2015 WL 1417847, at *2 (W.D.N.C. Mar. 27, 2015). In *Iqbal*, the Court defined what is a plausible claim for purposes of Rules 8 and 12, as discussed above.

Finally, Plaintiffs repeatedly assert that the Department "asks the Court to look at each tile [*i.e.*, fact] separately and to ignore the mosaic they create." Opp'n at 2; *see also id.* at 33, 34. But this argument misses the mark. It is true, of course, that it is appropriate to consider the overall factual context when considering plausibility. But in doing so, the Court must first determine whether individual claims in the complaint are "specific factual assertions," which must be credited, or "conclusory allegations," which must be disregarded. *See, e.g.*, *Iqbal*, 556 U.S. at 678 (well-pleaded facts must show plausible entitlement to relief for each claim); *Schubarth v. Fed. Republic of Germany*, No. 1:14-cv-02140 (CRC), 2017 WL 6551150, at *1 (D.D.C. Mar. 9, 2017) (only well-pleaded factual allegations are "entitled to an assumption of truth"); *Johnson v. Dist. of*

*Columbia*, 49 F. Supp. 3d 115, 119 n.2 (D.D.C. 2014) ("courts disregard conclusory allegations at the motion-to-dismiss stage").

At bottom, Plaintiffs fail to plead non-conclusory factual allegations regarding anything other than the Memorandum and the Email. This pleading failure dooms Plaintiffs' attempts to establish standing and to state a claim.

## II.   This Court Lacks Jurisdiction over Plaintiffs' Amended Complaint.

Plaintiffs have failed to demonstrate—as is their burden, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)—that this Court has subject-matter jurisdiction over this case, either with respect to standing or ripeness.

### A.   Plaintiffs Fail to Plead Article III Injury In Fact.

Plaintiffs, in their Amended Complaint, appeared to rely on a "chilling" theory of injury as a basis for their Article III injury in fact. *See, e.g.*, Am. Comp. ¶¶ 71, 83, 87, 99. As the Department explained in its opening memorandum, to establish standing based upon this type of injury, Plaintiffs must satisfy the standards set out by the Supreme Court in *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 151 (2014), which they cannot do. *See* MTD at 15-21. Plaintiffs have now retreated from this argument, which may be deemed conceded. *See* Opp'n at 37-39; *Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014) ("[LCvR 7(b)] is understood to mean that if a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded.").

Instead, Plaintiffs now rest their theory of standing on the assertion that they "have alleged that the challenged policy directive, which designates Plaintiffs as criminal 'threats' and 'domestic terrorists,' has harmed Plaintiffs' public reputation." Opp'n at 37. This argument fails. Plaintiffs are correct that reputational harm can be the basis for a cognizable injury in fact. *See, e.g.*,

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021).  But they are wrong to claim that they have established such cognizable harm here.

First, the complaint contains no creditable allegations that the Department has "designate[d] Plaintiffs as criminal 'threats' and 'domestic terrorists.'"  Opp'n at 37; Section I, *supra*.  Neither document designates Plaintiffs as *anything*—positive or negative.  The concept of domestic terrorism is not mentioned in either the Memorandum or the Email.  Rather, these documents note that "threats of violence" against school officials are not protected under the Constitution, and that the Department "takes these incidents seriously."  *See* Ex. A; *see also* Ex. B.  Plaintiffs' allegation that they have been labeled "domestic terrorists" by the Department is, as discussed above, merely a conclusory statement that does not suffice under *Iqbal*.  Absent well-pleaded facts supporting Plaintiffs' assertion of injury in fact—and this purported reputational harm is their sole claim of injury in fact—they lack standing to bring this suit.

As a final basis for their Article III injury, Plaintiffs state in their opposition brief that they "are currently targets of investigation and data collection."  Opp'n at 38.  But the Amended Complaint alleges no facts supporting such a claim.  In any event, neither the Memorandum nor the Email directs any government action against *Plaintiffs*, nor have Plaintiffs pleaded that they have engaged or would engage in any conduct that might plausibly bring them within the types of activities (*i.e.*, threats of violence) that are the subject of the Memorandum or Email.  Absent such pleaded facts, conclusory assertions in a brief cannot suffice.  *See, e.g., Sanchez-Mercedes v. Bureau of Prisons*, 435 F. Supp. 404, 430 n.21 (D.D.C. 2020) ("a complaint may not be amended by the briefs in opposition to a motion to dismiss") (internal quotation marks and citation omitted).

**B. Plaintiffs Cannot Establish that the Department Caused Them Any Injury, Or That Such Injury Would Be Redressable By An Order of this Court.**

In addition to their lack of injury in fact, Plaintiffs allege no facts to establish causation or redressability. *See* MTD at 22-24. They assert, based on the unsupported allegation that they have been labeled as a "criminal threat or domestic terrorist," Opp'n at 42, that declaratory relief in the form of a "judicial determination that the AG Policy violates federal law" would remedy their purported injury. They say such an order would "reassure Plaintiffs and those who associate with them that they could freely participate in their constitutionally protected activities" without being so labeled or being threatened by the government with investigation because of their speech. *Id.* But such an order would not afford them any such relief. The Memorandum and the Email simply reflect existing First Amendment law and/or internally categorize threats against school officials. Vacating these documents, or even stating that they somehow violated the law, would not alter the federal government's ability to investigate threats against school officials, when such investigations are an appropriate use of federal power, or to coordinate with state, local, Tribal, and territorial partners about such threats. Indeed, vacatur or declaratory relief with respect to these documents would merely cease interagency meetings (which have all occurred) or delete metadata and reporting about investigations of threats of violence, none of which plausibly involve Plaintiffs (who have pleaded no facts that they have taken actions that even tangentially involve threats of violence). Such action would not remedy the (insufficiently alleged) reputational injury on which Plaintiffs solely rely.

Plaintiffs further speculate that the Court could "enter an order enjoining the [Department] from making . . . false and harmful public statements about Plaintiffs." Opp'n at 43. But Plaintiffs have not even identified any improper *past* statements from the Department about them; they certainly have not articulated any basis to enjoin future speech by the Department of Justice. And

while Plaintiffs aver that the "Court could issue an order expunging all official government records that [identify] Plaintiffs because of their speech activity," *id.*, they do not plead facts establishing the existence of any such records. Article III does not authorize federal jurisdiction under such hypothetical circumstances. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ("[I]t must be 'likely', as opposed to merely speculative, that the injury will be redressed by a favorable decision") (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38 (1976)).

### C. Plaintiffs' Claims Are Not Ripe.

Similarly, Plaintiffs' claims are not ripe because Plaintiffs are not currently affected by the activities of the Defendants, and any future actions are inchoate. *See* MTD at 24-26. In their Opposition, Plaintiffs claim they are injured *now* because they are "subjects of the government's surveillance and data collection." Opp'n at 39. But Plaintiffs fail to plead facts that plausibly show any such surveillance or data collection of them. There therefore is no present hardship requiring current judicial action. *See, e.g.*, *Devia v. Nuclear Regul. Comm'n*, 492 F.3d 421, 424 (D.C. Cir. 2007) (noting that ripeness requires consideration of the "hardship to the parties of withholding court consideration") (quoting *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1431 (D.C. Cir. 1996)).

Nor, in any event, are Plaintiffs claims fit for judicial decision. *See* MTD at 24-26. That prong of the ripeness analysis considers whether the issue is purely legal, sufficiently final, and not inchoate. *See, e.g.*, *Devia*, 492 F.3d at 424. As discussed previously, neither Memorandum nor the Email initiate any actions against the Plaintiffs, nor do Plaintiffs allege that they will take any actions that fall even plausibly within the ambit of either document (*e.g.*, actions that could be seen as threats of violence). See MTD at 25-26; Opp'n at 40.

Finally, Plaintiffs state that "when the government chills a citizen's First Amendment rights, the case is ripe and the citizen need not wait for some adverse consequence before challenging the action." Opp'n at 40. But Plaintiffs have not sufficiently alleged that their rights *are* being chilled under the standards set out in *Susan B. Anthony*, and thus this proposition does not ripen their case. *See* MTD at 16-22.

### III.   Plaintiffs Fail To State a Constitutional Claim Under the First or Fifth Amendments.

Even if this Court has jurisdiction, Plaintiffs have failed to state a constitutional claim under either the First Amendment or the Fifth Amendment's equal protection component. As with standing, Plaintiffs' Opposition does not conform to the allegations in their Amended Complaint, and for this reason, and others, does nothing to rescue Plaintiffs' insufficient pleading.

### A.  The Government's Actions Comport with the First Amendment.

Plaintiffs' first claim for relief is that the Government's actions violate the First Amendment. *See* Am. Compl. ¶¶ 108-19. As set forth in the Amended Complaint and Opposition, their argument appears to have two facets: that the Department has "deprive[d] Plaintiffs of their fundamental right of expressive association," Am. Compl. ¶ 114; Opp'n at 17-23, and that the Department's actions are a "content-and viewpoint-based restriction on speech," Am. Compl. ¶ 109; Opp'n at 33. Neither of these arguments passes muster.

### 1.  The Department Has Not Violated Plaintiffs' Fundamental Right of Expression.

As the Department explained in its opening brief, while the First Amendment's speech-based protections are broad, they do not reach "true threats." *See* MTD at 22-23. "True threats" include "threats of violence," *Virginia v. Black*, 538 U.S. 343, 359 (2003), threats of intimidation, which is "where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm," *id.* at 360, or harassment (again, with a similar requirement of

an intent to cause fear of harm), *e.g.*, *United States v. Sayer*, 748 F.3d 425, 433 (1st Cir. 2014);
*Rodriguez v. Maricopa Cnty. Comm. Coll. Dist.*, 605 F.3d 703, 710 (9th Cir. 2010). Speech that
does not meet these standards is protected under the First Amendment. The Memorandum and
Email are consistent with this well-established framework. *See, e.g.*, Ex. A. ("While spirited
debate about policy matters is protected under our Constitution, that protection does not extend to
threats of violence or efforts to intimidate individuals based on their views."); *id.* ("The
Department is steadfast in its commitment to protect all people in the United States from violence,
threats of violence, and other forms of intimidation and harassment."); Ex. B. ("We share an
obligation to ensure all individuals are able to do their jobs without threats of violence or fear for
their safety."). The Department's actions reflect that policy speech is protected under the First
Amendment, but true threats are not. *See* Ex. A. Moreover, as discussed previously, Plaintiffs
never allege that they have or will engage in anything resembling a true threat, and so cannot
establish that they might fall within the type of activities that the Department, consistent with
existing case law, notes are not protected under the First Amendment.

> In response, Plaintiffs assert that:
>
> Nowhere in the documents cited in the First Amended Complaint does the AG limit
> his scope of the DOJ's investigation of these parents to 'true threats.' Indeed, 'true
> threats' does not appear anywhere in these documents; yet it appears over twenty
> times in the AG's brief in support of his motion. . . .The foundation of his argument
> to dismiss this case is that his policy only targets 'true threats'—and this foundation
> is demonstrably false.

Opp'n at 17 (emphasis omitted). This argument is without merit. As discussed above, "true
threats" are a *category* of unprotected speech that includes the "threats of violence, and other forms
of intimidation and harassment" that are identified in the Memorandum and the Email. Ex. A.
The fact that the Memorandum and the Email used specific examples of true threats, while the
Department's opening brief used the more general category, does not mean that the Department is

prohibiting constitutionally protected speech; all of the documents address actions that are *not* constitutionally protected.

### 2. The Department Has Not Discriminated on the Basis of Content or Viewpoint.

Both the Memorandum and the Email are neutral on their face; they address threats of violence against school officials and other forms of true threats, without any reference to the type of speaker, content of the speech, or viewpoint expressed by the speaker. *See* Exs. A, B; *see also, e.g.*, *Christian Legal Soc'y Chapter of the Univ. of Calif., Hastings Coll. of the Law v. Martinez*, 561 U.S. 661, 694-95 (2010) (holding that because challenged policy "draws no distinction between groups based on their message or perspective . . . [it] is textbook viewpoint neutral."). Plaintiffs assert repeatedly that "the AG Policy is not focused on 'investigating 'true threats'—it is focused on targeting certain political and religious viewpoints that are protected by the First Amendment," Opp'n at 18, but Plaintiffs offer no facts in support of this proposition.

### 3. The Department Has Not Designated Plaintiffs as "Criminal 'Threats' or 'Domestic Terrorists.'"

Plaintiffs next argue that the Department has "designat[ed] Plaintiffs as criminal 'threats' or 'domestic terrorists' on account of their religious, social, or political views," in violation of their "fundamental rights."[2] Opp'n at 29.

This allegation fails to state a claim. As discussed above, Plaintiffs do not plead that the Department has *ever* designated Plaintiffs as "criminal threats" or "domestic terrorists." That itself is enough to resolve the issue. But there is another dispositive problem.

Plaintiffs' argument rests upon *Meese v. Keene*, 481 U.S. 465 (1987). There, the Court considered the governmental designation of work that the plaintiff wanted to display as "political

---

[2] It is not clear whether this is a First Amendment or Fifth Amendment argument; because Plaintiffs cite *Meese v. Keene*, 481 U.S. 465 (1987), which is a First Amendment case, the Department will assume this is a First Amendment claim.

propaganda." Plaintiffs suggest that *Meese* can be read to suggest that if a designation is "*not* 'neutral,' 'evenhanded,' or without any 'pejorative connotation,' then a constitutional violation would have occurred." Opp'n at 29. But the Court's reference to a "neutral" label was not a reference to how the language was subjectively viewed, but to the fact that the label at issue in *Meese* was "a neutrally applied one which includes allies as well as adversaries of the United States." *Meese*, 481 U.S. at 483 n.17. So too here: the Memorandum and Email's reference to threats of violence apply neutrally, regardless of the views or background of the actor.

### 4. The Department Has Not Threatened Intrusive and Coercive Investigations and Surveillance to Dissuade Political Opposition in Violation of Plaintiffs' Fundamental Rights.

Next, Plaintiffs claim that the Department has threatened "investigation and surveillance" in violation of the First Amendment. *See* Opp'n at 30-32; *id.* at 31 n.7 (framing allegation as a putative First Amendment violation). This allegation fails to state a claim.

First, while Plaintiffs allege in their Opposition that the Department has threatened "surveillance," this allegation is absent from the Amended Complaint. The only reference is to note that the Memorandum "mentions the FBI," and that Plaintiffs allege that "[c]onducting investigations and surveillance. . . is what the FBI does." Am. Compl. ¶ 96. But the fact that the FBI may conduct surveillance, on some occasions, as part of its myriad of responsibilities, does not plausibly mean that the FBI *will* conduct surveillance on the Plaintiffs *on this occasion*, and Plaintiffs plead no facts, plausible or otherwise, to suggest that any surveillance of them by the Department is or will occur. Indeed, this fundamental fact distinguishes *The Presbyterian Church (USA) v. United States*, 870 F.2d 518 (9th Cir. 1989), upon which Plaintiffs primarily rely. There, it was publicly disclosed that federal agents "attended and surreptitiously tape recorded several [religious] services." *Id.* at 520. In that case, the allegations of surveillance were well-pleaded

(and, in fact, acknowledged), while here, there are no allegations of surveillance by the Department at all, much less well-pleaded ones.[3]

Nor have Plaintiffs properly pleaded that Defendants have investigated them, much less that such allegations were based on their political beliefs. Plaintiffs rest their claim on the allegation that "the AG made clear that DOJ would be surveilling and collecting information for an official database of parents and other private citizens that engage in speech activity at local school board meetings if the speech is found objectionable by the government." Opp'n at 32 (citing Am. Comp. ¶ 84-86). But the Amended Complaint does not plead facts supporting this sentence; rather, the cited paragraphs reference the Email, which simply directs the creation of metadata to identify investigations of threats of violence against school officials specifically and asks that certain descriptive information about the threats be provided. *See* Ex. B. That Email does not mention speech activity, the content or government views of the speech, creating a database of parents, or anything else that might suggest an improper investigation, or one based on constitutionally protected characteristics. Plaintiffs have failed to plead a constitutional violation.

## B.  The Government's Actions Comport with the Fifth Amendment.

Plaintiffs have largely retreated from the equal protection arguments they raised in their Amended Complaint. *See* MTD at 29-35. They do not advance an argument comparing their treatment to similarly situated people of different views, *id.* at 32, nor, as discussed above, do they plead facts showing that the Government is treating them differently because of their political viewpoint, or that the Memorandum or Email significantly interfere with their First Amendment

---

[3] Moreover, *Presbyterian Church* only held that plaintiffs had standing to raise a First Amendment claim, it did not hold that such a claim was property stated. *See Presbyterian Church*, 870 F.2d at 529 (declining to "address[] the churches' constitutional claims on the merits").

rights.  *Id.* at 33-35.  Instead, they rest their Fifth Amendment argument on a claim that the government is "target[ing] individuals or groups for disparate treatment based on their political, religious, or social views."  Opp'n at 32.

Again, Plaintiffs plead no facts supporting this claim.  As in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), while Plaintiffs allege that the Department's actions were taken *because* of their protected status, such conclusory allegations fail to support a constitutional claim.  MTD at 30-32.

As discussed above, the challenged documents are "facially neutral with respect" to political or religious beliefs.  *In re Navy Chaplaincy*, 738 F.3d 425, 429 (D.C. Cir. 2013).  Nor is there evidence of either discriminatory intent or discriminatory effect. Plaintiffs fail to put forward any well-pleaded facts establishing differential treatment, and indeed, fail in their Opposition to identify any similarly situated persons who were treated differently with regard to threats of school violence.  *E.g.*, *Ross v. Moffitt*, 417 U.S. 600, 609 (1974) ("'Equal protection' . . . emphasizes disparity in treatment by a State between classes of individuals whose situations are arguably indistinguishable.").  Plaintiffs fail to identify any statements by the Department indicating that the intent of the Memorandum or Email was to discriminate on the basis of political or religious viewpoints, just as they have failed to plead a disparate impact. *See, e.g.*, *In re Navy Chaplaincy*, 738 F.3d at 429 (rejecting equal protection argument after concluding that plaintiffs "have presented no evidence of discriminatory intent in the policies' enactment," "[n]or have they shown a current pattern of disparate outcomes from which unconstitutional discriminatory intent could be inferred under the prevailing understanding of equal protection.").

In addition, contrary to Plaintiffs' claims, *see* Opp'n at 33; Am. Compl. ¶ 100, none of the Department's actions "silenc[e] opposition" to any educational theories.  Opp'n at 33.  The Memorandum is explicit that "spirited debate about policy matters is protected under our

Constitution," Ex. A, and both the Email and the Memorandum are explicitly about *threats of violence against school officials*, not about the content of any school curricula. Plaintiffs are able—as they always have been—to challenge or criticize any school policies to which they object. They simply may not—as they never could without potential consequence—utter true threats against the school officials implementing such policies.

### C. The Government's Actions Are Consistent With the Parental Rights Protections Provided by the Constitution.

Plaintiffs claim that the Department has violated their fundamental parental rights to direct their children's education. *See* MTD at 35-36; Opp'n at 34. But they fail to explain *how* the Department has done so. *Iqbal*, 556 U.S. at 678 ("[t]hreadbare recitals of the elements of a cause of action . . . do not suffice.").

 Here, Plaintiffs have—and have exercised—the right to advocate for curricula they support, and to condemn curricula they oppose, something that the Department's actions do not implicate, much less forbid. All they cannot do—and could never have done—is utter true threats against school officials, but whatever the contours of the constitutional rights of parents, it does not reach such activities.

## IV. Plaintiffs Fail To State a Claim Under RFRA.

Finally, Plaintiffs have failed to plead facts plausibly establishing that the Department has violated the Religious Freedom Restoration Act ('RFRA"). *See* MTD at 36-39; Opp'n at 23-29.

As discussed previously, RFRA requires Plaintiffs to bear the burden of establishing (1) a government policy that implicates their religious exercise; (2) that the relevant exercise is grounded in a sincerely held religious belief; and (3) that the government action "substantially burdens" that exercise. MTD at 36-37. Plaintiffs assert that their "sincerely held religious beliefs compel them to raise and educate their children in accord with their faith and to strongly oppose

policies and education programs in their children's schools that are antithetical and contrary to Plaintiffs' faith." Opp'n at 26; *see also* Am. Compl. ¶ 132.

But even assuming the sincerity of such religious beliefs, Plaintiffs have not plausibly shown that such beliefs are burdened, let alone substantially. *See* MTD at 37-39. Rather, they argue that the Department's actions "substantially pressures Plaintiffs to modify their religious behavior . . . to remain silent." Opp'n at 27. But the Department's actions do not limit Plaintiffs' freedom of expression; rather, the Memorandum makes clear that such activities are protected. *See* Ex. A. There is thus no "substantial pressure" for them to "modify [their] behavior and to violate [their] beliefs. *Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*, 897 F.3d 314, 333 (D.C. Cir. 2018) (quoting *Kaemmerling v. Lappin*, 553 F.3d 669, 678 (D.C. Cir. 2008)).[4] Accordingly, there is no burden on their religious beliefs, much less a substantial one.

## CONCLUSION

For these reasons, and those set forward in Defendant's opening brief, this Court should grant Defendant's motion to dismiss Plaintiff's Amended Complaint, with prejudice.

---

[4] Plaintiffs attempt to distinguish *Kammerling* on its facts, *see* Opp'n at 27-28, but its basic holding—that there must be substantial pressure for plaintiffs to modify their religious behavior for there to be a RFRA violation—applies irrespective of the facts alleged.

Dated April 4, 2022                    Respectfully submitted,

                                       BRIAN M. BOYNTON
                                       Acting Assistant Attorney General

                                       BRIGHAM J. BOWEN
                                       Assistant Branch Director

                                       */s/ Joseph E. Borson*
                                       JOSEPH E. BORSON (Va. Bar No. 85519)
                                       Trial Attorney
                                       U. S. Department of Justice
                                       Civil Division, Federal Programs Branch
                                       1100 L St., NW
                                       Washington, D.C. 20005
                                       Tel.    (202) 514-1944
                                       email: joseph.borson@usdoj.gov

                                       *Counsel for Defendant*