UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SALINE PARENTS *et al.*,

    *Plaintiffs*,

v.

MERRICK B. GARLAND,

    *Defendant.*

No. 1:21-cv-2775 (DLF)

**MEMORANDUM OPINION**

Saline Parents, an association of parents, and six individual parents from Saline, Michigan, and Loudoun County, Virginia, seek to enjoin the Attorney General from enforcing an alleged policy that chills their activities protesting their school districts' policies. Before the Court is the defendant's Motion to Dismiss. Dkt. 10. For the reasons that follow, the Court will grant the motion under Rule 12(b)(1) for lack of jurisdiction.

**I.  BACKGROUND**

    **A.  Factual Background**

On October 4, 2021, the Office of the Attorney General issued a memorandum titled "Partnership Among Federal, State, Local, Tribal, and Territorial Law Enforcement to Address Threats Against School Administrators, Board Members, Teachers, and Staff." Def.'s Mot. to Dismiss, Ex. A (AG Memo) at 2, Dkt. 10-2. The memorandum targets "a disturbing spike in harassment, intimidation, and threats of violence against school administrators, board members, teachers, and staff who participate in the vital work of running . . . public schools." *Id.* It states: "While spirited debate about policy matters is protected under our Constitution, that protection

does not extend to threats of violence or efforts to intimidate individuals based on their views." *Id.*

The Attorney General's memorandum announced two action items. First, "[i]n the coming days, the Department [of Justice] w[ould] announce a series of measures designed to address the rise in criminal conduct directed toward school personnel." *Id.* Second, the Attorney General directed the FBI to "convene meetings with federal, state, local, Tribal, and territorial leaders in each federal judicial district" to discuss "strategies for addressing threats against school administrators, board members, teachers, and staff" and to "open dedicated lines of communication for threat reporting, assessment, and response." *Id.* Following the Attorney General's memorandum, on October 20, 2021 the FBI sent an internal email to agents describing its efforts to identify and track these threats. First Am. Compl. at ¶ 85, Dkt. 8; Def.'s Mot. to Dismiss, Ex. B (FBI Email) at 2, Dkt. 10-3. The email stated that the FBI "share[s] an obligation to ensure all individuals[, including school staff,] are able to do their jobs without threats of violence or fear for their safety." FBI Email at 2. "As a result, [the FBI] created a threat tag, EDUOFFICIALS, to track instances of related threats." *Id.* The email asked FBI offices to "apply the threat tag to investigations and assessments of threats specifically directed against school board administrators, board members, teachers, and staff," in order to "scope this threat on a national level and provide an opportunity for comprehensive analysis of the threat picture." *Id.*

The plaintiffs are Saline Parents, an "unincorporated association of parents," and six parents who reside in either Saline, Michigan or Loudoun County, Virginia. First Am. Compl. ¶¶ 9–37. Both the Saline Parents organization and the individual plaintiffs oppose "'progressive' policies and curricula" in their respective school districts, Saline Area Schools and Loudoun County Public Schools. *Id.* ¶¶ 11, 13, 16, 20, 22, 24, 26, 35. According to the plaintiffs, their

2

advocacy has included making public statements of opposition at school board meetings, *id.* ¶¶ 12, 27, such as "clapping instead of using 'jazz hands,'" *id.* ¶ 32; leading efforts to recall school board members by "collecting signatures, writing letters, and attending press conferences," *id.* ¶ 30; initiating a student walk out, *id.* ¶ 34; posting on social media, *id.* ¶ 35; and organizing a "shoe drop protest, where hundreds of shoes were left in front of" school administrative offices, *id.* ¶ 36. The plaintiffs explicitly state that their activities did not include "widespread threat of criminal violence," and that their meetings with school officials "involve[d] [only] private citizens expressing their opposition to harmful policies being considered by government officials . . . as is their right to do under the First Amendment." *Id.* ¶ 65.

### B.     Procedural Background

On October 19, 2021, the plaintiffs filed this suit against Merrick Garland in his official capacity as Attorney General. Dkt. 1. The plaintiffs allege that the Attorney General adopted an unlawful policy (AG Policy) "to use federal law enforcement resources to silence parents and other private citizens who publicly object to and oppose the . . . policies of the 'progressive' Left that are being implemented . . . in public school districts" such as Saline and Loudoun County. First Am. Compl. ¶ 2. Specifically, they allege that the AG Policy labels them as "domestic terrorist[s]" and "criminalize[s]" their speech, thereby chilling their "opposition and outrage to 'progressive' school board curricula and policies." *Id.* ¶¶ 88, 94.

The plaintiffs seek to enjoin the AG Policy and any federal actions taken pursuant to it. *Id.* ¶ D. Their complaint pleads causes of action based on the First Amendment, *id.* ¶¶ 108–19; equal protection under the Fifth Amendment, *id.* ¶¶ 120–25; protection of parental rights under the Fifth Amendment, *id.* ¶¶ 126–28; and the Religious Freedom Restoration Act, *id.* ¶¶ 129–40. The

defendant subsequently moved to dismiss the complaint under Rules 12(b)(1) and 12(b)(6) on multiple grounds, including for lack of standing. Dkt. 10.

## II.   LEGAL STANDARDS

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss an action for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Federal law empowers federal district courts to hear only certain kinds of cases, and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A court that lacks jurisdiction must dismiss the action. Fed. R. Civ. P. 12(b)(1), 12(h)(3).

When deciding a Rule 12(b)(1) motion, the court must "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged, and upon such facts determine [the] jurisdictional questions." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (citations and internal quotation marks omitted). But the court "may undertake an independent investigation" that examines "facts developed in the record beyond the complaint" in order to "assure itself of its own subject matter jurisdiction." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005) (internal quotation marks omitted). In doing so, it may consider "the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992). This can include "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Ward v. Dist. of Columbia Dep't of Youth*

*Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (citation and internal quotation marks omitted).

## III. ANALYSIS

The defendant seeks to dismiss the complaint on standing grounds. Mem. in Supp. of Def.'s Mot. to Dismiss at 16, Dkt. 10-1. To establish standing, a plaintiff must show: (1) an "injury in fact"; (2) a "causal connection between the injury" and the challenged action; and (3) a likelihood that the "injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks omitted). Here, the plaintiffs contend that they suffer two harms because of the alleged AG Policy: (1) the threat that the policy will be enforced against them, chilling their free speech and religious freedom rights; and (2) reputational harm. Pls.' Resp. in Opp'n to Mot. to Dismiss at 38, Dkt. 12. Because neither alleged harm satisfies the injury-in-fact requirement, the plaintiffs lack standing to sue.[1]

### A.   **Threat of Enforcement**

The plaintiffs' first alleged injury amounts to a pre-enforcement challenge because it derives from the threatened enforcement of a law. First Am. Compl. ¶¶ 83, 99. In such cases, plaintiffs need not show "[a]n actual arrest, prosecution, or other enforcement action." *Woodhull*

---

[1] The Court discusses both the organizational plaintiff and individual plaintiffs together because Saline Parents' organizational standing either depends on or is identical to the individual plaintiffs' standing. The organizational plaintiff, Saline Parents, may assert either representative standing or direct standing. As to representative standing, "[an organization] has standing to bring suit on behalf of its members when," among other things, "its members would otherwise have standing to sue in their own right." *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 181 (2000). Thus, whether Saline Parents has representative standing turns on whether the individual plaintiffs have standing. As to direct standing, "the organization's pleadings must survive the same standing analysis as that applied to individuals." *Am. Legal Found. v. FCC*, 808 F.2d 84, 89 (D.C. Cir. 1987). The complaint alleges that Saline Parents engages in the same advocacy and suffers the same injuries as the individual plaintiffs, so the organization's direct standing allegations are identical to the individual plaintiffs'.

*Freedom Found. v. United States*, 948 F.3d 363, 370 (D.C. Cir. 2020) (internal quotation marks omitted). Instead, they must plead facts establishing that "the threatened enforcement of a law is sufficiently imminent." *Id.* (internal quotation marks omitted). To do so, the plaintiffs must satisfy three requirements. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014). First, the plaintiffs must allege "an intention to engage in a course of conduct arguably affected with a constitutional interest." *Id.* at 161 (internal quotation marks omitted). Second, their "intended future conduct" must be "arguably proscribed by the [law] they wish to challenge." *Id.* at 162 (alterations and internal quotation marks omitted). Third, "the threat of future enforcement" must be "substantial." *Id.* at 164.

At the first prong, it is undisputed that the plaintiffs intend to engage in conduct that is arguably affected with a constitutional interest—namely, the First Amendment. The First Amendment protects free speech, including advocacy against school officials, but does not extend to "true threats" and "[t]hreats of violence." *Virginia v. Black*, 538 U.S. 343, 359 (2003). The plaintiffs allege, *see* First Am. Compl. ¶ 107, and the defendant agrees, *see* Def.'s Mem. at 19, that their activities are limited to "constitutionally protected activities" covered by the First Amendment.

But the plaintiffs fail at the second prong for two independent reasons. The alleged AG Policy does not "arguably proscribe[]" plaintiffs' conduct, *Susan B. Anthony List*, 573 U.S. at 162, because it is not "regulatory, proscriptive, or compulsory in nature," *Laird v. Tatum*, 408 U.S. 1, 11 (1972). And even if it were, the policy does not apply to the plaintiffs' constitutionally protected conduct.

The alleged AG Policy is not regulatory, proscriptive, or compulsory in nature because it does not impose any regulations, requirements, or enforcement actions on individuals. None of

the documents that the plaintiffs allege establish the policy create an imminent threat of future legal actions against anyone, much less the plaintiffs. The Attorney General's October 4 memorandum simply announced a plan to "announce a series of measures" in the future and directed the FBI to convene meetings with leaders in each federal judicial district. AG Memo at 2. At most, it charged the FBI with "open[ing] dedicated lines of communication for threat reporting, assessment, and response" at these meetings, without requiring any particular regulatory or enforcement action. *Id.* Similarly, the FBI's October 20 internal email created a new threat tag to track threats against school officials and listed a few guidelines along which to evaluate those threats. FBI Email at 2. Nowhere in the email did the FBI require that any particular action be taken in response to a threat labeled with the new tag. *See id.* Finally, the plaintiffs' photo of one marked Homeland Security vehicle outside a school board meeting—in a city that is neither Saline nor in Loudoun County—does not plausibly establish an inference that the Attorney General has taken or intends to take any kind of enforcement action. First Am. Compl. ¶ 87. The plaintiffs' future conduct therefore cannot be considered "arguably proscribed" by the alleged AG Policy. *Susan B. Anthony List*, 573 U.S. at 162.

Further, even if the alleged policy contained any kind of restriction, regulation, or proscription, it would not apply to the plaintiffs' conduct. The plaintiffs represent that their conduct includes verbal opposition and peaceful protests, akin to "private citizens petitioning their government officials for a redress of grievances," but never "threat[s] of criminal violence." First Am. Compl. ¶ 65. They emphasize that they intend to engage only in "constitutionally protected conduct." *Id.* ¶¶ 39, 65. The Attorney General's memorandum explicitly states that it does not target what "is protected under our Constitution," which includes "spirited debate about policy matters." AG Memo at 2. It only covers "criminal conduct" that is not constitutionally protected,

7

such as "threats of violence or efforts to intimidate individuals based on their views." *Id.*; *see Virginia*, 538 U.S. at 359–60 (stating that the First Amendment protects neither "true threats[,] . . . statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals" nor "[i]ntimidation in the constitutionally proscribable sense of the word . . . , where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death"). Similarly, the FBI's internal email applies a new threat tag only to "*threats* specifically directed against school board administrators, board members, teachers, and staff." FBI Letter at 2 (emphasis added). Assuming, as the Court must, that the complaint's factual allegations are true, *Cause of Action Inst. v. Internal Revenue Serv.*, 390 F. Supp. 3d 84, 91 (D.D.C. 2019), none of the plaintiffs' conduct, which is limited to constitutionally protected speech, falls within the scope of the alleged policy.

Despite the alleged policy's explicit terms, the plaintiffs blithely assert that they are nonetheless the "subjects" of the alleged policy, Pls.' Opp'n at 39, based solely on its timing and the fact that members of school boards have complained that plaintiffs were "attacking the board," *see* First Am. Compl. ¶¶ 89, 93–94. Without more, this allegation is unpersuasive. The plaintiffs also contend that they "are currently targets of investigation and data collection," Pls.' Opp'n at 38, but the complaint contains no such factual allegations. *See* generally First Am. Compl.

Based on the complaint, the Court cannot conclude that the alleged AG Policy "arguably proscribe[s]" the plaintiffs' conduct. *Woodhull*, 948 F.3d at 371. Thus, "there is something fundamental to a pre-enforcement challenge that is missing here." *Matthew A. Goldstein, PLLC v. U.S. Dep't of State*, 851 F.3d 1, 4 (D.C. Cir. 2017). Because the plaintiffs have not identified

any "desired conduct . . . that might trigger an enforcement action," *id.*, they lack standing to challenge the alleged policy.

### B.    Reputational Injury

The plaintiffs further allege that they have suffered reputational harm caused by "the AG's designation of [the] [p]laintiffs as criminal 'threats' and 'domestic terrorists.'" Pls.' Opp'n at 38. Reputational injury can be a cognizable type of injury in fact. *Meese v. Keene*, 481 U.S. 465, 473 (1987) (statute's labeling of a plaintiff's activities as "political propaganda" inflicted injury because the plaintiff's "personal, political, and professional reputation would suffer and his ability to obtain re-election and to practice his profession could be impaired"). Here, however, the plaintiffs have not sufficiently alleged that they will imminently suffer any reputational injury as a result of the AG Policy. As noted, the Attorney General's memorandum does not apply to the plaintiffs' activities, and even if it did, the policy does not label anyone a domestic terrorist, as the plaintiffs suggest, First Am. Compl. ¶¶ 38, 65. Nor does it create a reputational association.

The only concrete evidence that the plaintiffs provide of reputational injury is the National School Board Association's use of the words "domestic terrorism" in a September 29, 2021 letter to the White House. *See* First Am. Compl. ¶¶ 93–94; Def.'s Mem. at 13–14. This letter raised concerns about "acts of malice, violence, and threats against public school officials" and charactered these "heinous actions" as "equivalent to a form of domestic terrorism." Def.'s Mem. at 13–14. But for the reasons stated above, the letter cannot fairly be interpreted as directed at the plaintiffs' activities. Moreover, contrary to the plaintiffs' contention, the letter cannot plausibly be considered part of the alleged policy, much less "the sole basis for the AG Policy," First Am. Compl. ¶ 76. The letter was sent by a private entity unaffiliated with the Attorney General, and the Attorney General's October 4 memorandum does not even mention the letter. *See* AG Memo

9

at 2.  "[T]he court need not accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations."  *Gregorio v. Hoover*, 238 F. Supp. 3d 37, 44 (D.D.C. 2017) (internal quotation marks omitted).  Because the plaintiffs have not sufficiently alleged that they will suffer a reputational or other cognizable injury caused by the AG Policy, they lack standing to challenge the policy.

## CONCLUSION

For the foregoing reasons, the motion to dismiss is granted.  A separate order consistent with this decision accompanies this memorandum opinion.

*/s/ Dabney L. Friedrich*
———————————————
DABNEY L. FRIEDRICH
United States District Judge

September 23, 2022